# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 6, 2012

## STATE OF TENNESSEE v. RANDELL MURPHY

**Appeal from the Circuit Court for Madison County**
**No. 10-515     Donald H. Allen, Judge**

---

**No. W2011-00744-CCA-R3-CD  - Filed May 9, 2012**

---

The defendant, Randell Murphy, appeals from his Madison County Circuit Court guilty-pleaded convictions of burglary of an automobile; theft of property valued at $10,000 or more but less than $60,000; vandalism of property valued at $500 or more but less than $1,000; possession of burglary tools; and criminal impersonation.  The defendant received an effective sentence of 21 and one-half years.  In this appeal, he contends that the trial court erred by rejecting his plea agreement with the State, by denying his motion to withdraw his guilty pleas, and by imposing an excessive sentence.  Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Sheila B. Stevenson, Jackson, Tennessee, for the appellant, Randell Murphy.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Madison County grand jury returned an indictment charging the defendant and three others with burglary of an automobile, *see* T.C.A. § 39-14-402(a)(4) (2006); theft of property valued at more than $60,000, *see id.* §§ 39-14-103(a), -105(5); vandalism of property valued at $500 or more but less than $1,000, *see id.* §§ 39-14-408(a), (c); and possession of burglary tools, *see id.* § 39-14-701, in relation to the theft of a rental truck

filled with wheels and tires taken off of several semi trucks awaiting delivery to a trucking company. The defendant was also charged with criminal impersonation for providing a false name upon his arrest. On February 3, 2011, the defendant entered an open guilty plea to the burglary, vandalism, possession of burglary tools, and criminal impersonation charges as contained in the indictment. He also pleaded guilty to a reduced charge of theft of property valued at $10,000 or more but less than $60,000.

At the guilty plea submission hearing, the trial court explained that the parties had contacted the court on February 2, 2011, to advise that they had reached an agreement pursuant to which the defendant would plead guilty to the charges in the indictment, including the reduced theft charge, in exchange for a sentence of eight years' incarceration. The court also explained that it had rejected the agreement because it came on the eve of trial, several weeks past the plea agreement deadline set by the trial court, saying,

> I don't like to accept it [at] 2:00 on the afternoon before we're scheduled to go to trial. You know, a lot of people have to plan to be here. You know, witnesses have to take off work, officers have to reschedule, the [c]lerk has to notify jurors, the [c]ourt has to get prepared. A lot of people have to get prepared when these cases are set for trial and that's the reason we have plea cutoff dates.

The court informed the defendant, however, that he was free to "enter a plea this morning . . . and we'll have a sentencing hearing in a few weeks."

At that point, the defendant indicated his willingness to enter into an open plea. After the State recited the factual basis for the plea, however, the defendant stated that he could not agree with the facts as stated by the prosecutor. The trial court told the defendant that he had to accept the facts as alleged or proceed to trial, and the defendant said he wanted to plead guilty because he was "just tired." The trial court then allowed the defendant to enter "best interest" pleas of guilty.[1] The court also permitted the State to reduce the theft charge as it had in the cases of the co-defendants.

On April 21, 2011, the defendant filed a motion seeking reduction of his sentence, arguing that the State's notice seeking enhanced punishment failed to notify the

---

[1]In *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), the United States Supreme Court held that a criminal defendant may enter a guilty plea without admitting guilt if the defendant intelligently concludes that his best interests would be served by a plea of guilty.

defendant that he was subject to sentencing as a persistent or career offender and that the total effective sentence was so excessive as to amount to the imposition of cruel and unusual punishment. On that same day, the defendant filed a motion seeking to withdraw his guilty pleas on the basis that they were not "freely, voluntarily and intelligently made." As grounds in support of his motion, the defendant stated that the trial court abused its discretion by rejecting the plea agreement as untimely, that the defendant had failed to accept the factual summary offered by the State, that the defendant did not understand the implications of entering an "open" plea, and that the sentence imposed following his plea was so grossly out of line with that contained in the plea agreement as to create a manifest injustice.

Neither party presented any proof at the hearing on the defendant's motions. At the outset of the hearing, the trial court reiterated that it rejected the negotiated agreement in the defendant's case because it came on the eve of trial. The court conceded, however, that it accepted negotiated plea agreements for the three co-defendants on the eve of the first trial setting. The court also conceded that it continued the defendant's case on that same day on the basis that the defendant had received late-filed discovery materials from the State.

Defense counsel stated that the information provided by the State was "critical" to the defendant's case and that it "changed the whole picture of his trial." She said that it was on the basis of this information that the defendant decided to change his plea. Counsel said that the prosecutor made the new plea offer on a Friday and that she telephoned the prosecutor to accept the offer on the following Monday. The parties were unable to reach the trial court until February 2, 2011, the eve of the defendant's trial. At that point, the trial judge indicated via telephone that the agreement had come too late.

After hearing the procedural history, the trial court noted that it had "the right to reject any recommendations," adding, "I don't know specifically what the recommendation was, but . . . the [c]ourt chose not to accept the recommendation. So, I mean, that was it." Later, the court insisted, for the first time, that it had rejected the plea agreement because it "didn't feel like it was an appropriate recommendation."

Defense counsel also stated that she did not believe that the defendant understood the implications of entering an open plea. She conceded, however, that the trial court attempted to explain the ramifications to the defendant and that the defendant stated that he was entering the plea freely and voluntarily.

At the conclusion of the hearing, the trial court denied the defendant's motion to withdraw his plea, finding that the plea was knowingly, voluntarily, and intelligently entered and that the defendant was simply "not satisfied with the sentence he received." The court also denied the defendant's motion to reduce his sentence, concluding that the court

had "sentenced [the] defendant . . . to . . . an appropriate sentence based upon his long, extensive criminal history."

In this appeal, the defendant contends that the trial court erred by rejecting the plea agreement as untimely, by denying his motion to withdraw the guilty pleas, and by imposing an excessive sentence.

## I. Rejection of Plea Agreement

The defendant first asserts that the trial court abused its discretion by rejecting the plea agreement on the basis that it came after the deadline imposed by the trial court for plea negotiations. He argues that the deadline imposed by the trial court was unreasonable under the circumstances of the case and that the trial court failed to comply with the requirements of Rule 11 of the Tennessee Rules of Criminal Procedure when rejecting the agreement. The State contends that the trial court acted within its authority when rejecting the agreement and that it complied with all applicable procedural rules.

Although the decision to accept or reject a plea agreement rests within the sound discretion of the trial court, *see* Tenn. R. Crim. P. 11; *State v. Layman*, 214 S.W.3d 442, 452 (Tenn. 2007), the court's discretion is not completely unfettered, *see State v. Williams*, 851 S.W.2d 828, 832 (Tenn. Crim. App. 1992) ("That there is discretion at all implies that there are limits to its exercise."). Rule 11 of the Tennessee Rules of Criminal Procedure contains the guidelines for accepting or rejecting plea agreements:

(3) Judicial Consideration of a Plea Agreement.

(A) Rule 11(c)(1)(A) or (C) Agreement.

If the agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept or reject the agreement pursuant to Rule 11(c)(4) or (5), or may defer its decision until it has had an opportunity to consider the presentence report.

(B) Rule 11(c)(1)(B) Agreement.

If the agreement is of the type specified in Rule 11(c)(1)(B), the court shall advise the defendant that the defendant has no right to withdraw the plea if the court does not accept the recommendation or request.

(4) Accepting a Plea Agreement.

If the court accepts the plea agreement, the court shall advise the defendant that it will embody in the judgment and sentence the disposition provided in the plea agreement.

(5) Rejecting a Plea Agreement.

If the court rejects the plea agreement, the court shall do the following on the record and in open court (or, for good cause, in camera):

(A) advise the defendant personally that the court is not bound by the plea agreement;

(B) inform the parties that the court rejects the plea agreement and give the defendant an opportunity to withdraw the plea; and

(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case

Tenn. R. Crim. P. 11(c)(3)-(5). In addition to creating the framework for acceptance or rejection of a plea agreement, Rule 11 permits the trial court "to impose reasonable pretrial time limits on the court's consideration of plea agreements, a practice which will allow maximum efficiency in the docketing of cases proceeding to trial on pleas of not guilty." Tenn. R. Crim. P. 11(c)(2), Advisory Comm'n Comments. Although we can find no case defining the parameters of the "reasonable time limits" permitted by the rule, we likewise find no case ruling that the trial court abused its discretion by setting a deadline for entering into a negotiated plea. *See, e.g.*, *Kim McGill v. State*, No. W2006-00499-CCA-R3-PC, slip op. at 5 (Tenn. Crim. App., Jackson, May 23, 2007) (holding that the setting of plea deadlines "is entirely consistent with the provisions of Tenn. R. Crim. P. 11 and the trial court's authority to control the orderly process of the case and the court's docket"). Moreover, the law is well-settled that a defendant does not have a constitutional or statutory right to plea negotiations. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *State v. Head*, 971 S.W.2d 49, 50 (Tenn. Crim. App. 1997).

Here, the State offered an agreement to the defendant and each of his co-defendants shortly before the first trial setting. Each of the co-defendants accepted the agreement and entered pleas of guilty on the day that the case was initially set for trial. The

defendant requested a continuance of the trial date for the purpose of reviewing the additional discovery he had obtained from the State, but neither the State nor the defendant gave any indication that the defendant might change his plea. Significantly, the defendant does not argue that the trial court expressly extended the plea agreement deadline as it had on previous occasions. Given the wide discretion afforded the trial court to reject a plea agreement and the fact that the defendant has no entitlement to a specific plea agreement, we cannot say that the trial court abused its discretion by rejecting the agreement in this case on the basis of its coming after the plea deadline.[2]

We likewise find no merit to the defendant's claim that the trial court failed to comply with the requirements of Rule 11 when rejecting the agreement. Although the initial presentation of the agreement and the trial court's rejection occurred via telephone, the agreement and rejection were later memorialized on the record in open court as required by the Rule. *See* Tenn. R. Crim. P. 11(c)(5). After the defendant indicated a desire to enter open pleas of guilty, the trial court advised the defendant that it would impose a sentence in accordance with the applicable sentencing range after a sentencing hearing. The court also provided the defendant with all the constitutionally required warnings prior to accepting his pleas.

## II. Denial of Motion to Withdraw Plea

The defendant asserts that the trial court abused its discretion by refusing to allow him to withdraw his guilty pleas, claiming that the pleas were not knowingly and voluntarily entered. He argues that he did not acquiesce to the factual summary by the State, did not understand the consequences of entering the open pleas, and "only entered a 'best interest' plea." The State contends that the trial court committed no error.

Rule 32(f) of the Tennessee Rules of Criminal Procedure provides that "[a]fter sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). The term "manifest injustice" is not defined either in the rule or in those cases in which the rule has been applied; instead, trial courts and appellate courts must determine whether manifest injustice exists on a case by case basis.

---

[2]That the defendant actually pleaded guilty to a reduced theft charge has no impact on our conclusion because the prosecutor retains the power to determine what charges to levy against an accused. *See State v. Head*, 971 S.W.2d 49, 51 (Tenn. Crim. App. 1997) ("It is well established law that it is within the district attorney general's discretion, and not the trial court's, to decide if and when a prosecution is to be instituted, the precise character of the offense to be charged, and, once instituted, whether the prosecution should go forward, enter into a plea bargain agreement, or dismiss the prosecution.")

*See State v. Crowe*, 168 S.W.3d 731, 741-42 (Tenn. 2005) (recognizing absence of definition for manifest injustice and citing examples of circumstances warranting withdrawal); *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The defendant has the burden of establishing that a plea of guilty should be withdrawn to prevent manifest injustice. *Turner*, 919 S.W.2d at 355.

To determine whether the defendant should be permitted to withdraw his guilty plea to correct a manifest injustice, a court must scrutinize carefully the circumstances under which the trial court accepted the plea. An analysis of the plea submission process under Tennessee Rule of Criminal Procedure 11(b) facilitates an inquiry into the existence of manifest injustice. *See generally State v. McClintock*, 732 S.W.2d 268 (Tenn. 1987) (for rules concerning acceptance of guilty pleas); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977) (same). Tennessee courts have allowed the withdrawal of guilty pleas to prevent manifest injustice when

> (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*Crowe*, 168 S.W.3d at 742 (footnotes omitted). Courts have also found that manifest injustice resulted from the trial court's failure to advise a defendant of the appropriate sentencing range, to apply the appropriate sentencing statute, or to inform a defendant of the consequences flowing from the guilty plea. *See generally State v. Nagele*, 353 S.W.3d 112 (Tenn. 2011). A guilty plea, however, should not be withdrawn merely because the defendant has had a change of heart, *Crowe*, 168 S.W.3d at 743; *see also Ray v. State*, 451 S.W.2d 854, 856 (1970), nor should a defendant's dissatisfaction with an unexpectedly harsh sentence be sufficient justification for a withdrawal, *Crowe*, 168 S.W.3d at 743; *see also Clenny v. State*, 576 S.W.2d 12, 15 (Tenn. Crim. App. 1978).

The decision whether to permit a defendant to withdraw his plea "is a matter addressed to the sound discretion of the trial court, regardless of when the motion is filed." *Crowe*, 168 S.W.3d at 740 (citing *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003)).

Here, the defendant filed a motion after sentencing but before his judgment became final asking to withdraw his pleas on grounds that "his plea was not freely,

voluntarily and intelligently made," claiming that he had insufficient time to consider the implications of the open plea before making it and that his "sentence increased from an effective 8 year sentence to an effective 21 1/2 year sentence, which is manifest injustice." The trial court denied the motion, ruling that the defendant's pleas were knowingly, voluntarily, and intelligently entered. In our view, the trial court did not abuse its discretion in so ruling.

The trial court informed the defendant more than once that it had rejected the negotiated agreement but would permit the defendant to enter open pleas. The court advised the defendant of the minimum and maximum penalties proscribed for each offense and that he would be given a sentence "somewhere within those ranges of punishment." Additionally, the court noted that although the State was seeking to have the defendant sentenced as "at least" a Range II offender, the final decision regarding the applicable range would be decided at the sentencing hearing. The trial court did not promise the defendant that he would be sentenced in any particular range and specifically warned the defendant that his prior criminal history would impact whatever sentence he received.

When the defendant disagreed with the facts as summarized by the State, insisting that he had not participated in the actual taking of the Penske truck or the tires and rims, the court informed the defendant that he did not have to plead guilty and that the court was willing to try the case immediately. The defendant then insisted that he wanted to plead guilty even though the prosecutor's summary was "not correct," saying, "I want to plead best interest." The trial court clarified that the defendant wanted to enter "best interest" pleas to the charges and asked the defendant four times if he was sure about entering the pleas. When the defendant maintained that it was his desire to plead guilty, the trial court accepted the pleas, finding them to be "freely, voluntarily, knowingly, and intelligently made" and "that there is a factual basis for the plea" based upon the facts as summarized by the State. Finally, the trial court made a specific finding that pleading guilty was in the defendant's best interest given that the co-defendants had already pleaded guilty and "testified under oath about his participation."

*III. Sentencing*

The defendant challenges the sentence imposed by the trial court, arguing that the trial court should not have sentenced him as a persistent or career offender when the State had asked only for Range II sentencing and should not have imposed consecutive sentencing. In response, the State asserts that the sentence imposed was appropriate.

At the March 21, 2011 sentencing hearing, Mike Barber, the general manager of Tag Truck Center in Jackson, testified that on April 18, 2010, someone used a stolen

Penske truck to drive through the fence surrounding the property, took 89 tires and wheels off the trucks located there, and took tools from one of the trucks. He said that the cost to repair the damage to the trucks was "right at $3,000.00." The property was later recovered in the possession of the defendant and co-defendants.

The presentence report, which was exhibited to the sentencing hearing, established that the defendant had prior convictions from Illinois for drug possession, weapons possession, illegal transportation of liquor, theft of property valued between $1,000 and $10,000, and rape. The defendant had prior convictions from Alabama for felony escape, forgery, aggravated burglary, and receiving stolen property. The report also established that a bench warrant had been issued from Berrien County, Michigan for the defendant's failure to appear on charges of breaking and entering, possession of burglary tools, and "unlawful driving away motor vehicle."

The 60-year-old defendant testified that the date of birth and social security number contained in the presentence report were not correct but that "[e]verything else is correct." He added, however, that the recitation of his criminal history contained in the report was "really not correct" and was instead "inaccurate" and "kind of misleading." He said that although the list of charged offenses was "mostly correct," many of the dispositions were not because he pleaded to lesser offenses than those listed. Specifically, the defendant said that he was not convicted of rape, as was indicated in the report, but instead convicted of sexual battery. He said that on the "Alabama charges," he "just pled guilty to everything that was there" in exchange for a total effective sentence of 25 years' incarceration. The defendant added that he did not feel like the court had given him a sufficient opportunity to accept the agreement offered by the State.

During cross-examination, the defendant acknowledged that he had been on parole from a 13-year Illinois sentence until August 2010. Upon questioning by the court, the defendant admitted that there was a warrant for his arrest on a charge of failure to appear pending in Berrien County, Michigan. He said that he failed to appear because he had been arrested on the charges in this case and was unable to make bond.

At the conclusion of the hearing, the State asked the trial court to impose Range II sentences because its notice seeking enhanced punishment only listed sufficient convictions to support a sentence within that range. The State also asked the trial court to impose the maximum sentence within the range for each offense and to order the imposition of consecutive sentencing.

The trial court found that the defendant had a previous history of criminal convictions in addition to that necessary to establish the range, *see* T.C.A. § 40-35-114(1);

that the defendant was a leader in the commission of the offenses, *see id.* § 40-35-114(2); that the offenses involved more than one victim, *see id.* § 40-35-114(3); and that the defendant was on parole for an Illinois conviction and bail for a Michigan charge at the time he committed the offenses, *see id.* § 40-35-114(13). The court found in mitigation that the defendant's conduct did not cause or threaten serious bodily injury. *See id.* § 40-35-113(1). The court then performed a detailed review of the defendant's prior criminal history, the bulk of which the defendant admitted during his testimony, and concluded that, despite the notice seeking enhanced punishment and the prosecutor's statements during the plea colloquy that he qualified as a Range II offender, the defendant qualified as a career offender for his Class E felony convictions and a Range III, persistent offender for his Class C felony conviction. Specifically, the court determined that based upon the information contained in the presentence report and the defendant's admissions at the sentencing hearing, the defendant had ten prior felony convictions. The court made no finding of the specific class for the prior felony convictions. Finally, the court concluded that partially consecutive sentencing was warranted based on the defendant's extensive record of criminal activity. *See id.* § 40-35-115(1). Based upon its findings as to enhancement, mitigation, and sentencing range, the trial court imposed the following fully-incarcerative sentences:

| Count | Conviction | Sentence | Range | Alignment |
| --- | --- | --- | --- | --- |
| 1 | automobile burglary | six years | career offender | consecutive to counts 2 and 5 |
| 2 | theft | 15 years | persistent offender | consecutive to counts 1 and 3 |
| 3 | vandalism | six years | career offender | consecutive to counts 2 and 5 |
| 4 | possession of burglary tools | 11 months and 29 days | N/A | consecutive to counts 2 and 5 |
| 5 | criminal impersonation | six months | N/A | consecutive to all other counts |

The total effective sentence was, therefore, 21 and a half years.

When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d

166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration" to the appropriate "factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Since the 2005 revisions to our sentencing act rendered enhancement and mitigating factors advisory, appellate review does not extend to the weight afforded mitigating and enhancement factors by the trial court. *State v. Carter*, 254 S.W.3d 335, 345-46 (Tenn. 2008). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

> In making its sentencing decision, the trial court was required to consider:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

*A. Notice Seeking Enhanced Punishment*

The defendant argues that although the State did not notify the defendant of any particular sentencing range, the notice seeking enhanced punishment only listed sufficient convictions to place the defendant within Range II and that the State should be bound by this designation. The State contends that the trial court did not err by sentencing the defendant in ranges greater than Range II because it "substantially complied with the requirements of" Code section 40-35-202 and because the defendant failed to establish that he was prejudiced by the failure of the notice to list all of his prior felony convictions.

Code section 40-35-202 provides:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions. The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named in the record is the same as the defendant before the court, and is prima facie evidence of the facts set out in the record.

T.C.A. § 40-35-202(a). "The purpose of the requirement is to provide the defendant with 'fair notice' that he is exposed to something other than standard sentencing. It is intended to facilitate plea-bargaining, to inform plea decisions, and to assist with trial strategy." *State v. Benham*, 113 S.W.3d 702, 705 (Tenn. 2003) (quoting *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990)).

> [T]he notice provision of Tenn. Code Ann. § 40-35-202(a) requires, at a minimum, that the State file: (1) written notice, (2) clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the

nature of the prior felony conviction, the dates of the convictions, and the identity of the courts of the convictions.

*State v. Livingston*, 197 S.W.3d 710, 713-14 (Tenn. 2006) (footnote omitted). "Failure to file any notice to seek enhanced sentencing pursuant to Tennessee Code Annotated section 40-35-202(a) is grounds for re-sentencing as a Range I offender." *State v. Cooper*, 321 S.W.3d 501, 507 (Tenn. 2010) (citing *State v. Pender*, 687 S.W.2d 714, 719-20 (Tenn. Crim. App. 1984)).

> [W]hen the State has substantially complied with Section 40-35-202(a), an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief. But it is the State's responsibility to assert the appropriate sentencing status in the first instance, and it may not shift these burdens to an accused by filing what is essentially an empty notice.

*Adams*, 788 S.W.2d at 559.

In this case, the State filed a notice seeking enhanced punishment on October 21, 2010, that requested "enhanced punishment for the [d]efendant upon a verdict of guilt" and listed January 3, 1984 Illinois convictions of theft and rape in support of its request. The presentence report filed on December 16, 2010, listed prior Illinois convictions of drug possession, aggravated discharge of a firearm, being a felon in possession of a firearm, illegal transportation of liquor, theft of property valued between $1,000 and $10,000, and rape. The December 16, 2010 report also listed several "arrests in Alabama" for which there was "not sufficient information" to warrant their inclusion in the criminal history portion of the report. On December 22, 2010, the State filed an amended notice seeking enhanced punishment that included the two 1984 convictions listed in the previous notice and added a 2002 Illinois conviction of drug possession, 2002 Illinois convictions of aggravated discharge of a firearm and being a felon in possession of a weapon that had the same offense date, and an Illinois conviction of illegal transportation of alcohol. Neither notice filed by the State included any conviction from Alabama as support for an enhanced sentence. A second presentence report was filed on February 28, 2011. The February 28, 2011 report added a 1986 Alabama conviction of felony escape, a 1982 Alabama conviction of felony escape, 1982 Alabama convictions of six counts of forgery, a 1986 Alabama conviction of aggravated burglary, and a 1986 Alabama conviction of receiving stolen property.

At the sentencing hearing, the defendant conceded his prior convictions with the exception of the listed conviction of rape, for which he said he pleaded guilty to a

reduced charge of sexual battery, and did not contest being sentenced to more than a Range II sentence on the basis of the State's incomplete notice. In fact, the defendant did not object to his range classification at all, and defense counsel stated that the defendant did "not object to putting him in at least Range II." Although the State's notice in this case, which did not specify a specific range and did not include any of the defendant's Alabama convictions, was arguably inadequate to apprise the defendant that he was subject to sentencing as a Range III or career offender, the defendant has failed to establish that he was prejudiced by the incomplete notice. The defendant's detailed concession of his prior criminal history during his testimony showed an intimate familiarity with his previous convictions. Importantly, the defendant failed to show that he relied upon the incomplete notice when entering his guilty pleas. Although the State noted during the plea submission hearing that the defendant was most likely a Range II offender, the trial court warned the defendant that the court would not make a final determination regarding his range classification until the sentencing hearing. The defendant's failure to object to the Alabama convictions being used to enhance his range permitted the trial court to utilize those convictions for determining the appropriate range classification.

## B. Total Effective Sentence

The defendant also challenges the length of his total effective sentence, challenging both the imposition of maximum sentences on each count and the imposition of consecutive sentencing on grounds that "[a] sentence of 21 and [a] half-years should be a sentence reserved for the most dangerous offender or the most heinous crime."

Although the defendant does not challenge the application of the enhancement or mitigating factors, upon our de novo review we conclude that the trial court erred by applying two enhancement factors. The trial court applied enhancement factor two, that the defendant was a leader in the commission of the offenses, *see id.* § 40-35-114(2), but the record contains no proof supporting the application of this factor. The offense involved the defendant and three co-defendants, but there was no proof, either during the guilty plea submission hearing or the sentencing hearing, to establish that the defendant had a leadership role in the offenses. The trial court also applied enhancement factor three, that the offenses involved more than one victim, *see id.* § 40-35-114(3), on the basis that property was taken or damaged from two different businesses. This enhancement factor is inapplicable, however, because the defendant was convicted of separate offenses as to each victim. *See, e.g.*, *State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); *State v. Lambert*, 741 S.W.2d 127 (Tenn. Crim. App. 1987)). Given the advisory nature of the enhancement factors and the existence of two remaining enhancement factors, we cannot say that the misapplication of these two factors warrants resentencing to a shorter term of years for any of the defendant's convictions.

Similarly, we conclude that the imposition of partially consecutive sentences was warranted based upon the defendant's extensive record of criminal activity. The presentence report established that the 60-year-old defendant had criminal convictions beginning nearly 30 years prior to the offenses in this case. *See* T.C.A. § 40-35-115(b)(2).

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE