**STATE of Tennessee, Appellee,**

v.

**Frank James PENDER, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 28, 1984.

Opinion on Petition to Rehear
Dec. 19, 1984.

Permission to Appeal Denied by
Supreme Court March 4, 1985.

---

Edward Witt Chandler, Memphis, for appellant.

W.J. Michael Cody, Atty. Gen., William Barry Wood, Asst. Atty. Gen., Nashville, Clayburn Peeples, Dist. Atty. Gen., A.H. Schoonover, Asst. Dist. Atty. Gen., Trenton, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Frank James Pender, was convicted of aggravated kidnapping and aggravated rape, receiving Range II sentences of fifty (50) years for each offense. His sentences are to be served concurrently.

In this appeal, the defendant contests the evidence, says both of his convictions cannot stand, insists that the aggravated rape statute is unconstitutional, complains that one of the jurors should not have sat on his case, alleges error concerning the admission into evidence of his statement, his post-arrest silence and his green trousers, says the trial court erred in failing to charge the missing witness rule, and contends his sentences were improperly imposed. We find merit to his sentencing complaint, but find no reversible error incident to his other complaints.

According to the testimony of the eighteen (18) year old victim in this case, on December 16, 1982, at approximately 11:30 p.m., she and her fiancé, Darrell McCready, were travelling through Tennessee on Interstate 40 when their car broke down at the edge of Fayette County. Two black men, the defendant and James Shaw, stopped to ask if help was on the way. They left a few minutes later. Since they could not get assistance until the next morning, the victim and McCready decided to sleep in the car.

The defendant and Shaw returned a little later and told McCready to open the door or they would force it open because they wanted to "borrow his old lady for a little bit." After McCready got out of the car, the victim was forced into the men's truck and driven down the road into Haywood County. The defendant and Shaw took the victim's clothing off and took turns raping her while holding her down. The victim fought with the men and said that some of

her hair was ripped out because it had gotten caught in the window handle when she tried to jump out the window.

About one-half (½) hour later, the victim was able to get out of the truck. Her assailants threw her clothes out on the road and left. The victim went to a nearby house where she called the police. Later that night, the victim identified a truck at the defendant's house as the one in which she had been raped. She also identified the defendant as one of the men who kidnapped and raped her.

The victim further testified that she did not know what happened to McCready after he got out of the car. He did not testify at the trial.

Sam Croom testified that at approximately 2:00 a.m., the victim knocked on his door and said that she had had a wreck and killed her cat. After he told the victim to go to another house, she became very upset and started crying and yelling for help. The police were then called. Mr. Croom said that the victim was very upset when she came to his house.

Dr. David Stewart examined the victim at 6:00 a.m. He testified that her vulva was moderately swelled and that he found spermatazoa in her vagina. He observed a knot on the back of her head, many scratches, and an abrasion on her toe. Dr. Stewart described the victim as upset and nervous.

Officers Jeffrey Holt, Lemuel Marlar, and Phillip Grey all testified that the victim described the truck in which the rapes had occurred and later identified it as the one in front of the defendant's house. After the defendant gave his permission, the officers opened the truck and discovered hair, the same color as the victim's, entangled around the window handle. The defendant was arrested at that time.

Lucien English, Special Agent for the Tennessee Bureau of Criminal Investigation, interviewed the victim the next morning and described her as emotionally drained, highly nervous, and fidgety. He further testified that he interviewed and took a sworn statement from the defendant later that day. In his statement, the defendant said that he and Shaw picked the victim up because they thought they wanted to have sex with her. According to the statement, the victim entered the truck on her own free will and took off her clothes herself. The defendant said that he got out of the truck and did not have intercourse with the victim.

A serologist with the Tennessee Bureau of Investigation Crime Laboratory, conducted tests on the pants taken from the defendant and discovered the presence of blood stains and spermatazoa. The serologist also found the presence of spermatazoa on the victim's underwear and jeans.

James Shaw testified as a State's witness. He testified that he had been indicted with the defendant in this matter, but that he had negotiated a plea of guilty. Shaw stated that the victim was not forced into the truck but that after she got in, she "hollered a few times," and tried to get out. Shaw tried to have intercourse with the victim, but said that the defendant told him to get out of the way. Shaw further testified that the defendant removed the victim's clothes and that when the victim begged them not to hurt her, the defendant told her that if she cooperated, they would not hurt her.

■ From the foregoing summary of the evidence, it is clear that the jury was well warranted in finding the defendant guilty beyond a reasonable doubt of aggravated kidnapping and aggravated rape. The evidentiary tests outlined in T.R.A.P. 13(e) and *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) are fully satisfied by the proof in this case.

■ Further, the defendant's argument that the evidence failed to show any personal injury within the meaning of T.C.A. §§ 39-2-603, 39-2-602, and 39-2-101 is without merit. The evidence that the victim sustained bodily injuries was clearly showed by the proof.

■ Additionally, the defendant's venue complaint is not meritorious. The evi-

dence showed that the victim was abducted in Fayette County and taken to Haywood County where she was raped. With respect to the offense of kidnapping, there is wide latitude in trying a defendant in either county where the victim is taken from one county to another county. *State v. Holtcamp*, 614 S.W.2d 389 (Tenn.Cr.App.1980). We find that the evidence clearly established Haywood County as the proper county of venue for both offenses.

Further, contrary to the defendant's insistence, the defendant's convictions for both aggravated kidnapping and aggravated rape were proper. *State v. Black*, 524 S.W.2d 913 (Tenn.1975); *Morgan v. State*, 582 S.W.2d 94 (Tenn.Cr.App.1979).

Also without merit is the defendant's argument that the aggravated rape statute is unconstitutionally vague. Our Supreme Court has previously ruled that this statute is not unconstitutionally vague. *State v. Wilkins*, 655 S.W.2d 914 (Tenn.1983); *State v. Thomas*, 635 S.W.2d 114 (Tenn. 1982).

Next, the defendant contends that he was denied the right to a fair trial because one of the jurors was a Brownsville, Tennessee police officer.

Juror Claude H. Gibbs testified post-trial that he was an officer with the Brownsville Police Department; however, he was not a regular police officer, only a reserve officer who worked when he was called in on special occasions. He testified that in his reserve officer capacity, he had no participation in the investigation of the case. Also, he had neither talked to any of the officers who were witnesses in the case nor talked to any of the other people involved. He stated that his position as a reserve officer did not influence his decision in the case. He acknowledged to defense counsel that if a policeman testified in court, he would believe him under oath.

The record shows that on voir dire neither the defense nor the State elicited from juror Gibbs his officer status with the Brownsville Police Department. We have reviewed juror Gibbs' voir dire examination, and nothing therein indicates that he would be prejudiced or biased against the defendant. He affirmatively acknowledged that he could be fair and impartial.

The constitutional guaranty of trial by an impartial jury requires that the jury be free of even a reasonable suspicion of bias and prejudice. *Hyatt v. State*, 221 Tenn. 644, 430 S.W.2d 129 (1967). However, a juror is not incompetent merely because he is a member of a particular order, association, or other organization. *State v. Mason*, 623 S.W.2d 126 (Tenn.Cr. App.1981).

In our view, juror Gibbs' status as a reserve police officer, standing by itself, does not lead to the conclusion that he was a biased or prejudiced juror, and as previously stated, there is nothing in the record to indicate bias or prejudice on his part. The fact that he stated post-trial that he would believe a police officer on oath does not demonstrate bias or prejudice when it is considered that all witnesses are presumed to tell the truth. *See Hull v. State*, 553 S.W.2d 90, 93 (Tenn.Cr.App. 1977).

We find that the defendant has not carried his burden to show that juror Gibbs was in some way biased or prejudiced. *Bowman v. State*, 598 S.W.2d 809, 812 (Tenn.Cr.App.1980); *Clariday v. State*, 552 S.W.2d 759, 772 (Tenn.Cr.App.1976).

Also, whether the State was aware of juror Gibbs' officer status and should have disclosed such to the defendant is of no significance. Both the State and the defendant had a full opportunity on voir dire to elicit whatever information they desired about juror Gibbs, and we are aware of no authority that would have required disclosure of this information by the State, even if the State had been aware of it.

Further, since the record shows no bias or prejudice on the part of juror Gibbs, then he was competent to sit on the case. The record demonstrates that the defendant received a fair trial free from any bias or prejudice. Under these circumstances, and contrary to the defendant's

further argument, it may not be said that his own counsel's failure to elicit on voir dire juror Gibbs' officer status would amount to ineffective representation on the part of his counsel.

We find no merit to the defendant's complaint about juror Gibbs.

The defendant raises additional issues concerning the admission of certain evidence.

■■■ The defendant says that his green trousers were improperly admitted into evidence, arguing that they were illegally seized. The police seized, without a search warrant, the trousers from the defendant while he was in jail. This occurred one or two days after his arrest.

In *United States v. Edwards*, 415 U.S. 800, 804–809, 94 S.Ct. 1234, 1237–1239, 39 L.Ed.2d 771 (1974), the Court held that the warrantless seizure of an individual's clothing may be considered as a reasonable, hence constitutional, search when made while he is in custody following his arrest. *See also State v. Barger*, 612 S.W.2d 485, 491 (Tenn.Cr.App.1980).

We find that the defendant's trousers were properly admitted into evidence.

■■■ Likewise, we find that the defendant's statement to the police was properly admitted into evidence. The defendant was given his *Miranda* admonitions and he signed a waiver of rights form. The evidence shows that the statement was given voluntarily. Further, the statement was not the product of an illegal arrest, as is argued by the defendant. The evidence shows that the defendant was legally arrested. The evidence clearly supports the trial court's finding that the statement was admissible in evidence.

■■■ Further, we are in agreement with the defendant that his right to post-arrest silence was violated when the State was permitted to elicit from Officer Lemuel Malar that at the time the defendant was arrested, the defendant made no statement. This was error. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Braden v. State*, 534 S.W.2d 657 (Tenn.1976). However, in view of the overwhelming proof showing the defendant's guilt, we find this error to be harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see also Lyons v. State*, 596 S.W.2d 104 (Tenn.Cr.App.1979).

■■■ Another complaint by the defendant is that the trial court erred in failing to charge the missing witness rule regarding the absence of Darrell McCready, the victim's former fiancé.

When the matter was discussed, State's counsel explained that the State had subpoenaed McCready who lived out of the State, and that the State had talked to him, receiving assurances from him that he would be present. This demonstrates that the State had made a good faith effort to produce the witness, and obviously the proof from the other witnesses was such that had he been present, he certainly would not have given testimony unfavorable to the State and in favor of the defendant. Clearly, under all the circumstances, the absence of this witness did not create an inference that his testimony would have been unfavorable to the State's case.

We find that the court did not err by refusing to give this instruction.

■■■ Finally, we find merit to the defendant's complaint about his Range II sentences.

Under the Criminal Sentencing Reform Act, Range II sentences are reserved for one who is found by the court to be a persistent offender and/or who is convicted of an especially aggravated offense. The sentence for a standard or especially mitigated offender shall be to a term within Range I. T.C.A. § 40–35–109(c) (Supp. 1984).

Further, the Reform Act requires the State to file *before trial* a notice of intent to seek enhanced punishment if the State believes that "a defendant should be sentenced to an enhanced punishment for a second or subsequent violation of the crime charged or, for an especially aggravated

offense or as a persistent offender."
T.C.A. § 40–35–202(a) (1982).

The State did not file before (or after) trial the notice as required by T.C.A. § 40–35–202(a). Therefore we are obligated to find that the trial court was without authority to impose Range II sentences upon the defendant. In view of this finding, we need not consider the defendant's additional argument that his sentences were excessive.

Accordingly, we affirm the defendant's convictions, but we remand the case to the trial court for a new sentencing hearing, at which time the trial court shall fix the defendant's sentences in Range I at such terms as the trial court, in its discretion, finds appropriate.

Affirmed and remanded for further proceedings not inconsistent with this opinion.

WALKER, P.J., and BYERS, J., concur.

## ORDER

The State has filed a petition to rehear requesting us to reconsider our ruling that the State is obligated to comply with the notice requirements of T.C.A. § 40–35–202(a) (1982) before a Range II sentence can be imposed upon a defendant. This we decline to do. The Legislature has expressly mandated this requirement and we see no reason why the State should be relieved of its obligation to follow the law.

The petition to rehear is dismissed. It is so ordered.

/s/ Mark A. Walker
Presiding Judge
/s/ Joe D. Duncan
Judge
/s/ John K. Byers
Judge