IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 24, 2014

## DANNY LEE GREENE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Washington County**
**No. 37107   R. Jerry Beck, Judge**

**No. E2013-01583-CCA-R3-PC - Filed July 24, 2014**

The Petitioner, Danny Lee Greene, appeals the Washington County Criminal Court's denial of his petition for post-conviction relief from his 2007 conviction for second degree murder and his twenty-three-year sentence as a violent offender. The Petitioner contends that the trial court erred by denying him relief because (1) juror bias existed and (2) he received the ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Ashley D. Boyer, Jonesborough, Tennessee, for the appellant, Danny Lee Greene.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; and Anthony W. Clark, District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner appealed his second degree murder conviction, and this court affirmed the conviction and summarized the facts of the case as follows:

The victim was shot and killed on June 28, 2005, outside the Days Inn on North Roan Street in Johnson City. The victim and his girlfriend were staying at the hotel, and he was killed after going outside to retrieve his girlfriend's sweater from their car. The defendant and a co-defendant, his cousin Jason Austin, traveled to the hotel to confront the victim because of an incident between Austin and the victim a few days earlier. A third codefendant, Marc Coffey, was charged with facilitation of the crime because

he drove the defendant and Austin to the hotel.

The proof at trial reflected that the victim and Austin had been involved in an incident while driving in Johnson City on June 22, 2005. Austin was driving with his girlfriend when they noticed the victim. Austin's girlfriend laughed at the victim because he was wearing pink clothing. The victim saw her laugh, and he cursed her, threatened her, and brandished a gun. Austin and his girlfriend fled from the victim.

Around 4:00 a.m. on the morning of June 28, Austin and his girlfriend were leaving a store in Johnson City when they observed the victim's car in the parking lot of the Days Inn. They returned to the defendant's home, where they had been the previous evening, and Austin and the defendant formed a plan to assault the victim. Multiple witnesses saw the defendant arm himself with a pistol before he left his home.

The defendant and Austin met Coffey in the parking lot of the North Johnson City Baptist Church after he agreed to drive the men to the hotel because Austin promised to repay a debt and to give him drugs. When they arrived at the Days Inn, the defendant and Austin saw the victim in the parking lot and approached him. They spoke briefly before Austin drew a pistol and struck the victim in the face. The defendant then drew a pistol, and the victim attempted to run away. The victim's shorts fell down as he was running, and the defendant and Austin fired shots at him. The victim fell to the ground and did not move. Coffey testified that the victim did not reach for a weapon or try to strike either the defendant or Austin. After the shooting, the men jumped into the bed of the truck and returned to the church parking lot.

Testimony at trial demonstrated that the victim was shot once in the left thigh with the bullet lodging in his left hand and once in the back with the bullet lodging in his brain. The bullet that severed the victim's spinal cord was identified as the specific cause of the victim's death and was fired from the gun employed by the defendant.

*State v. Danny Lee Greene*, No. E2008-02423-CCA-R3-CD, slip op. at 1-2 (Tenn. Crim. App. June 21, 2010).

The Petitioner filed a petition for post-conviction relief contending that he received the ineffective assistance of counsel. He alleged counsel failed to call potential witnesses, review with him the charges and the State's evidence against him, file a motion to suppress

his statement to the police, request a psychological evaluation, and inform him of the possible consequences of testifying at the trial. The Petitioner filed an amended petition alleging that counsel provided ineffective assistance by failing to question jurors adequately, request a change of venue, and present mitigating evidence at the sentencing hearing. He also alleged that the State withheld exculpatory evidence and that the trial court conducted voir dire improperly, failed to instruct the jury on all defenses, and erred by denying his motion for a judgment of acquittal.

At the post-conviction hearing, the Petitioner testified that his original attorney filed a motion to suppress his pretrial statement. He said counsel, though, withdrew the motion without explanation.

The Petitioner testified that during the trial, "we" heard "rumors" about a juror whose wife worked with the victim's family. He said the juror was called to the stand and questioned about the relationship but "that was the extent of the conversation." The Petitioner said that although it was alleged the juror's wife worked with the victim's family, he was not sure of the relationship because she was not questioned on the record about it.

The Petitioner testified that he requested a psychological evaluation but that counsel said it was not needed. He said he learned the State offered a plea agreement of eight years to his codefendant, Marc Coffey.

On cross-examination, the Petitioner testified that "a few people" told him the juror's wife worked with the victim's family. He said that the juror was only questioned about his talking about the case with other people and that the juror was not asked about his wife's relationship with the victim's family. On redirect examination, the Petitioner testified that the juror was questioned because his wife was seen hugging and talking to the victim's family.

Counsel testified that he withdrew the motion to suppress the Petitioner's statement to the police. He said that the Petitioner claimed he was "kind of drug [sic] along . . . to an event that he didn't plan." He said the Petitioner found himself in a bad situation with a man who had a reputation for violence. He said "they" confronted the victim, and the Petitioner said the victim "flashed" what he thought was a gun but was a carabiner, a tool used for rope climbing. He said the victim, though, threatened the Petitioner's friend or cousin with a gun earlier that week. He said the chosen theory of the case was that the Petitioner acted in self-defense and reacted to a perceived threat. He said that although the Petitioner's statement to the police might have been given under duress and tainted by his intoxication, it was a truthful depiction of the theory of the case and corroborated the Petitioner's version of events. He said that the Petitioner was the "second shooter" and that his firing the gun was

a reaction to hearing the first gunshot. He said he did not pursue the motion to suppress as a matter of strategy because in the event the Petitioner chose not to testify, no evidence of self-defense would have been presented without the statement.

Counsel testified that he recalled a discussion about a juror's wife showing sympathy or emotion toward the victim's family. He said that it was brought to the trial court's attention and that an inquiry was made. He did not recall discussing the matter in chambers but said that after reviewing the transcript, he "indicated" to the court that he might file a motion to excuse the juror based on impropriety or the appearance of impropriety. He said, "it appears that I assured myself . . . that I didn't feel like there was any taint." He said he spoke to the juror's wife outside the courtroom and told the trial judge he was satisfied that no problem existed. He did not recall the substance of the conversation. He said he assumed he had "some assurance from her" that she did not know the victim. He said he was convinced that if she had indicated she had a family or blood relationship with the victim's family, he would have filed a motion to excuse the juror.

Counsel testified that when the potential problem arose with the juror's wife, he, the district attorney, and the trial judge discussed the matter in chambers. He said he and the district attorney spoke to the juror's wife outside the courtroom and afterward told the judge that they did not believe there was a problem and that the juror could remain on the panel.

Counsel testified that he did not request a psychological evaluation because no evidence showed the Petitioner was unstable or had a history of mental illness and because the theory was self-defense. He did not recall if he explained his reasoning to the Petitioner. He said he chose not to file a motion for a change of venue because it "cut both ways" in that the victim had a horrible reputation as a violent drug addict. He said that the defense had no problem picking a jury and that the trial was about two years after the killing. He concluded that no factual basis existed for a venue change and made a strategic decision not to request it.

Counsel testified that he investigated the State's plea agreement with Mr. Coffey. He said he doubted the prosecutor's claims that the State had not offered Mr. Coffey probation before the Petitioner's trial. He said that although he did not recall the substance of Mr. Coffey's plea agreement, he said he was "uncomfortable" that Mr. Coffey received "a heck of a deal."

On cross-examination, counsel testified that he reviewed the Petitioner's typed and video recorded statement. He said the Petitioner told him the statement was accurate. He said that although the Petitioner had been awake for a long time and might have been impaired, he thought the jury would consider the statement credible because the Petitioner

was not "sharp in his mind." He said the Petitioner was sleep deprived and incapable of manipulating the police officers. He said he did not want the statement suppressed because at that time, he did not know if the Petitioner would testify.

Counsel testified that after reviewing the trial transcript, he believed the in-chambers meeting with the district attorney and the trial judge occurred after the jury was empaneled, not during jury selection. He said that during the discussion, they talked about how to deal with the situation. He recalled the defense could not show that the juror saw his wife hugging the victim's family member.

Counsel testified that he had tried over fifty cases, including capital murder cases. He said that if he believed the juror was tainted, he would have filed a motion to excuse the juror. He said that although his memory was limited, he knew the juror did not see his wife hugging the victim's family member. He stated that if he had determined the wife had a close connection to the victim's family, he would have filed a motion to excuse the juror.

Counsel testified that in addition to self-defense, he attempted to show that the Petitioner's older cousin, who had influence on him, "rousted" the Petitioner out of bed early that morning and that the Petitioner was impaired at that time, "had no beef" with the victim, and was "along for the ride." He believed the jury would have been sympathetic toward the Petitioner. He said that although the Petitioner's "brain was fogged . . . by drug addiction," no evidence showed the Petitioner had a mental illness that would have warranted a mental defense. He said the Petitioner was able to assist him in preparing the defense and for the trial. He said the Petitioner was "a bright young man."

Counsel testified that after reviewing the trial transcript, he knew Mr. Coffey's domestic violence charge was dismissed pursuant to the plea agreement and that he cross-examined Mr. Coffey about the plea agreement. He agreed he questioned Mr. Coffey at length about the terms of the plea agreement and the State's preferential treatment. He agreed Mr. Coffey testified that he had pleaded guilty to facilitation of second degree murder, that the agreement was Mr. Coffey would receive an eight- to twelve-year sentence, and that at the time of the Petitioner's trial, no agreement had been made regarding whether the State would recommend probation. The prosecutor told the trial court that the State recommended probation at the time of Mr. Coffey's sentencing hearing.

The prosecutor was called as witness and testified that he was the District Attorney General for the First Judicial District and that he tried the Petitioner's case. Regarding the juror's wife who hugged the victim's family member, he recalled that an attorney told him a woman, whom he knew was related to a juror, patted or hugged the victim's ten- or eleven-year old brother because he had been crying. He said he told counsel immediately and held

an in-chambers meeting with the trial judge. He said he and counsel talked to the woman, who said her husband was on the jury. He said he asked if she knew the family, and the woman denied knowing them and talking to her husband about the case. He denied the woman was questioned by the trial court. He said counsel talked to the woman alone for a few minutes, returned to the courtroom, and discussed the issue at length on the record. He recalled counsel ultimately told the trial court that he was satisfied no taint existed.

The prosecutor testified that at the time Mr. Coffey testified at the Petitioner's trial, he had not decided whether to recommend probation. He denied that he decided to recommend probation if Mr. Coffey testified at the Petitioner's trial but chose not to tell anyone. He said he told Mr. Coffey's attorney that if Mr. Coffey testified pursuant to his plea agreement, he would decide later whether to recommend probation. He said Mr. Coffey's receiving probation was based solely on his testifying at the Petitioner's trial. He said the sentence was eight years' probation.

The trial court denied post-conviction relief. Regarding counsel's failure to move to suppress the Petitioner's statement to the police, the court found that the Petitioner offered little evidence. It found that it was counsel's "intentional strategy" not to seek suppression because the statement assisted the defense, especially if the Petitioner chose not to testify at the trial.

Regarding the issue of juror bias, the trial court found that the Petitioner testified "*he heard that* the *wife of a juror* was seen hugging a member of the . . . victim's family." (emphasis in order). The court found that no proof was presented showing any hugging occurred within the view of the sitting jurors and that counsel confirmed he had no knowledge that the jurors saw it. The court found that the prosecutor and counsel talked with the juror's wife and were satisfied that no taint existed to any of the jurors. The court found that although counsel initially said he might file a motion to excuse the juror, after talking with the juror's wife, counsel decided not to move to exclude the juror. The court found no evidence showing the jurors were tainted.

Regarding the psychological exam, the trial court found that the issue was without merit because of the chosen theory of self-defense and because counsel testified that the Petitioner was a bright person and that counsel saw no reason to have the Petitioner evaluated. Regarding the change of venue, the court found that counsel testified that he had no trouble picking a jury and that the victim had a terrible reputation. Regarding Mr. Coffey's plea agreement, the court found that the agreement did not involve a grant of probation before or during the Petitioner's trial and that the State did not withhold information regarding the plea agreement. This appeal followed.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

**I**

The Petitioner contends that the trial court erred by denying post-conviction relief due to juror bias. He argues that a juror who was biased against him should have been excused from the jury. He also argues that the trial court should have conducted a hearing to determine whether the juror should have been removed. The State responds that the court properly denied relief because the Petitioner failed to show the juror was biased. We agree that the Petitioner is not entitled to relief.

Our supreme court has said, "[T]he constitutional guaranty of trial by an impartial jury requires the jury to be free of even a reasonable suspicion of bias and prejudice." *Hyatt v. State*, 430 S.W.2d 129, 130 (Tenn. 1967); *State v. Pender*, 687 S.W.2d 714, 718 (Tenn. Crim. App. 1984). Both the State and Federal Constitutions guarantee the right to trial by a fair and impartial jury. U.S. Const. amend VI; Tenn. Const. art. I, § 9; *see State v. Akins*, 867 S.W.2d 350, 354 (Tenn. Crim. App. 1993); *Toombs v. State*, 270 S.W.2d 649, 650 (Tenn. 1954). The right to a jury that is fair and impartial is fundamental and cannot be treated as harmless error. *State v. Odom*, 336 S.W.3d 556 (Tenn. 2011) (citing *Gray v. Mississippi*, 481 U.S. 648, 668 (1987)).

A juror's contacting parties, attorneys, or witnesses is a ground for dismissal of the juror if the contact results in any extraneous information or improper influence. *State v. Smith*, 418 S.W.3d 38, 46 (Tenn. Crim. App. 1987). Upon learning of such communication, the trial court shall ensure the juror has not been improperly influenced or exposed to extraneous information. *Id.* The defendant has the burden to show extraneous information "was imparted to one or more jurors or some outside improper influence was brought to bear on one or more jurors." *State v. Blackwell*, 664 S.W.2d 686, 689 (Tenn. 1984). Likewise, the defendant has the burden of establishing juror bias. *State v. Taylor*, 669 S.W.2d 694, 700 (Tenn. Crim. App. 1993). Also, the court should "[i]n most circumstances, . . . conduct a hearing in open court in the presence of the defendant to place the facts in the record and to

determine . . . whether cause exists to find that the juror should be disqualified." *Smith*, 418 S.W.3d at 46.

After a recess during the Petitioner's case-in-chief at the trial and out of the jury's presence, counsel told the trial court that he would not be making a motion regarding any potential juror bias. The court requested a bench conference during which it stated that the parties came to chambers previously without a court reporter and that counsel said he believed he might make a motion, although the substance of the motion was not discussed. The court said that it did not want to discuss the substance of the motion in chambers and that counsel had decided not to make any motions. Counsel told the court that he expressed concern in chambers, that "we've aired out those concerns," and that "we've agreed nothing needed to be done." The court suggested bringing "that person" into the courtroom, and counsel responded that a memorandum could be made from the bench. Counsel told the court that he and the prosecutor talked to "this woman" and that they were each satisfied no taint existed.

After the bench conference concluded, the trial court stated for the record that the attorneys came to chambers and that counsel advised the court he might make a motion to strike a juror because of actions by the juror's wife. The court named the juror and said his wife was seen hugging the victim's son. He stated that an attorney observed the hugging and informed the parties. The parties agreed the trial court described accurately the events in chambers. The court stated that when court reconvened, counsel told the court he would not make a motion to strike the juror, that both parties talked to the juror's wife, and that they were each satisfied that no problem existed.

The issue of juror bias during the Petitioner's trial should have been raised in the appeal of his conviction. The Petitioner first raised the issue in his petition for post-conviction relief. Tennessee Code Annotated section 40-30-106(g) (2010) states that "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]" The record reflects that counsel was satisfied that no juror bias existed and chose not to request the juror's dismissal. Likewise, the issue was not raised in the motion for a new trial or in the appeal of his conviction. Because the Petitioner failed to raise the issue before his petition for post-conviction relief, the issue is waived. *See, e.g., House v. State*, 911 S.W.2d 705, 713-14 (Tenn 1995).

**II**

The Petitioner contends that the trial court erred by denying post-conviction relief because he received the ineffective assistance of counsel. He argues counsel was ineffective

because he failed to file a motion to excuse the alleged biased juror. The State responds that counsel did not provide ineffective assistance. We agree with the State.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the petitioner must also show that but for the substandard performance, there is "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

Regarding counsel's failure to file a motion to excuse the alleged biased juror, the record reflects that counsel learned of the juror's wife's conduct and investigated jointly with the prosecutor. Counsel questioned her about her relationship with the victim's family, and she denied having a relationship with them and talking to her husband about the Petitioner's case. Counsel stated that he concluded no bias existed, and the record reflects that the issue was discussed extensively in court. The record shows that her hugging the victim's young son was a show of her personal sympathy. No evidence was presented at the post-conviction hearing showing that an improper relationship existed between the juror's and the victim's families, that any juror saw her hugging the victim's son, and that any of the jurors were biased against the Petitioner as a result of her conduct. We conclude that the evidence does not preponderate against the trial court's findings and that the court did not err by denying post-conviction relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.


_____
JOSEPH M. TIPTON, PRESIDING JUDGE