IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 8, 2025 Session

## STATE OF TENNESSEE v. JASON A. MCCAIN

**Appeal from the Circuit Court for Henry County**
**No. 16738     Bruce Irwin Griffey, Judge**
_____

**No. W2024-01185-CCA-R3-CD**
_____

The Defendant, Jason A. McCain, pled guilty in the Henry County Circuit Court to reckless endangerment with a deadly weapon, a Class E felony. After a sentencing hearing, the trial court sentenced him as a Range III, persistent offender to six years in confinement. On appeal, the Defendant contends that the trial court should have sentenced him as a Range I, standard offender because the State did not file its notice of intent to seek enhancement punishment pursuant to Tennessee Code Annotated section 40-35-202(a) until the day of his sentencing hearing and that his six-year sentence is excessive. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and MATTHEW J. WILSON, JJ., joined.

Joshua V. Lehde (on appeal), Public Defender Fellow – Appellate Division, Franklin, Tennessee, and Chad A. Cox (at trial), Paris, Tennessee, for the appellant, Jason A. McCain.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Neil Thompson, District Attorney General; and C. Morgan Crocker, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On December 9, 2021, the Henry County General Sessions Court issued arrest warrants for the Defendant for aggravated assault and reckless endangerment. In the affidavit of complaint for the aggravated assault warrant, Officer Wayne Fuqua of the

Henry County Sheriff's Office ("HCSO") stated that on December 8, 2021, the Defendant fired gunshots at John D. Allen, Jr., after Mr. Allen arrived at the Defendant's home to visit and to pick up some property Mr. Allen had stored there.[1] Officer Fuqua further stated that the Defendant then hit and kicked Mr. Allen and that Officer Fuqua saw injuries to Mr. Allen's face and left ankle. In the affidavit of complaint for the reckless endangerment warrant, Officer Fuqua stated that in firing four or five gunshots at Mr. Allen, the Defendant fired toward Highway 79, endangering the community.

On December 20, 2021, the Henry County General Sessions Court issued additional arrest warrants for the Defendant for felony evading arrest and reckless endangerment. In the affidavit of complaint for the evading arrest warrant, Officer Jamie Myrick of the HCSO stated that on December 9, 2021, the Defendant fled in his pickup truck when Officer Myrick tried to conduct a traffic stop and arrest him for assaulting Mr. Allen the previous day. Officer Myrick stated in the affidavit of complaint for the reckless endangerment warrant that he pursued the Defendant but had to terminate the pursuit because the Defendant was driving at an extremely high rate of speed, was passing vehicles, and was weaving in and out of traffic.

In March 2022, the Henry County Grand Jury returned a four-count indictment, charging the Defendant with aggravated assault with a deadly weapon, to-wit: a firearm, in count one; reckless endangerment with a deadly weapon, to-wit: a firearm, in count two; felony evading arrest in count three; and reckless endangerment with a deadly weapon, to-wit: a motor vehicle, in count four. Counts one and two related to the incident on December 8, 2021, and counts three and four related to the incident on December 9, 2021. Subsequently, the trial court entered an agreed order severing counts one and two from counts three and four.

On November 29, 2023, the Defendant pled guilty to count four, reckless endangerment with a deadly weapon, a Class E felony. The parties did not prepare a written plea agreement.

At the outset of the guilty plea hearing, defense counsel advised the trial court that the Defendant was set to go to trial on December 7, 2023, but "didn't want to waste the Court's time on a trial and has decided to enter a blind plea to Count 4, the Reckless Endangerment." The trial court asked if the State was going to dismiss counts one, two, and three, and the State answered in the affirmative. During the plea colloquy, the trial court asked if the Defendant was pleading guilty knowingly, freely, and voluntarily, and the Defendant said yes. The trial court advised him that he was pleading guilty to reckless endangerment, a Class E felony; that his range of punishment was one to six years; and

---

[1] The Defendant stated in his presentence report that Mr. Allen was his brother.

that his release eligibility would be thirty, thirty-five, or forty-five percent, depending on his prior criminal history. The trial court asked if the Defendant understood, and the Defendant said yes. The trial court told the Defendant that the court would determine his sentence after preparation of a presentence report and after a sentencing hearing and that "there's no guarantee what your sentence will be[.]" The trial court asked the Defendant again if he understood, and the Defendant again said yes. The trial court accepted the Defendant's guilty plea and tentatively set his sentencing hearing for February 2, 2024.

The sentencing hearing ended up being reset to March 18, 2024. That same day, the State filed a notice of intent to seek enhanced punishment pursuant to Tennessee Code Annotated section 40-35-202(a). During the hearing, defense counsel advised the trial court that he received the State's notice of intent to seek enhanced punishment "about 10 minutes ago" and asserted that the trial court should sentence the Defendant as a Range I, standard offender because the statute required that the State file its notice of intent to seek enhanced punishment at least ten days before trial or acceptance of the guilty plea. The trial court stated that it wanted to review case law on the issue and reset the hearing to May 2, 2024.

At the hearing on May 2, 2024, defense counsel contended that *State v. Benham*, 113 S.W.3d 702 (Tenn. 2003), and *State v. Patterson*, 538 S.W.3d 431 (Tenn. 2017), supported the Defendant's position that the State was required to file its notice of intent to seek enhanced punishment not less than ten days before acceptance of the guilty plea. Defense counsel argued that because the State filed its notice after the Defendant's guilty plea, the trial court should sentence the Defendant as a Range I, standard offender. The trial court stated that it wanted to review the cases cited by the defense "just a little more closely" and review the audio recording or transcript of the guilty plea hearing. The trial court reset the sentencing hearing for June 10, 2024.

At the sentencing hearing on June 10, 2024, the trial court concluded that in order to be sentenced as a Range I, standard offender based on the State's failure to file a timely notice of intent to seek enhanced punishment, the Defendant was required to show prejudice pursuant to *State v. Stephenson*, 752 S.W.2d 80 (Tenn. 1988). The trial court recalled that it specifically advised the Defendant during the guilty plea hearing that reckless endangerment with a deadly weapon was a Class E felony; that the offense carried a range of punishment of one to six years; and that the Defendant was facing a release eligibility of thirty, thirty-five, or forty-five percent, depending on his prior criminal history. The trial court also recalled advising the Defendant that there was no guarantee as to the length of his sentence and that the decision would be made by the trial court. Defense counsel responded that *Stephenson* was distinguishable in that the State filed the notice late in *Stephenson* but not after trial or acceptance of the guilty plea.

The trial court reiterated that it thought the Defendant had to show prejudice. The State asked to respond and stated as follows:

So, the State's position last time -- and [defense counsel] is right -- when the State figured out in March that [defense counsel] and his client weren't going to abide by an agreement that we had for him to plead as a blind plea to -- as a Range III offender, yes, the State went and filed it because there was never a written plea agreement entered on that day.

[T]here is nothing entered into the record other than the verbal discussion between the Court and the Defendant; that's the reason the Court had to advise him the way [it] did, saying, "You can be looking at 1 to 6 years, at 30-, 35-, 45-percent," because the Court did not have a paper in front of [it] which would have waived the need for the range notice, because in that agreement it would have said he was a Range III, looking at 4 to 6 years at 45 percent.

There -- the State is not trying to pick apart all the details, but when the Defense is not abiding by the agreement that we made, there was things that were dismissed because of that agreement, and now we're acting like that was never a thing, that we never talked about that.

The trial court stated that it appeared the Defendant "sort of wants his cake and eat it too." The court offered to allow the Defendant to withdraw his guilty plea and offered to set the case for trial, with no objection from the State, but defense counsel responded, "[W]e're not going to withdraw our plea[.]" The trial court concluded that the Defendant was not prejudiced by the State's late-filing of the notice of intent to seek enhanced punishment, explaining that the Defendant

fully knew and understood at the time that the Court took his guilty plea that his sentence could actually be [at] 30-, 35-percent, or 45-percent. And the Court specifically used those words with him, and he said he understood. I said we wouldn't know that until the Court sees the presentence investigation report, so.

The trial court proceeded with the sentencing hearing.

The trial court admitted the Defendant's presentence report into evidence. In the report, the then forty-one-year-old Defendant stated that he was a high school graduate and obtained his commercial driver's license (CDL). He said he had been a truck driver since 2007 and had been a self-employed owner and operator of his own truck since 2015. The

Defendant did not report any physical or mental health issues. The report showed that from 2003 to 2015, the Defendant was convicted of five felonies: arson, possession of a Schedule II controlled substance, and three convictions of possession of a Schedule VI controlled substance. The report showed that from 2000 to 2022, the Defendant was convicted of eleven misdemeanors, including simple possession, casual exchange, theft, assault, driving on a suspended license, driving on a revoked license, evading arrest, and vandalism. The Defendant's Strong-R assessment, which was attached to the report, classified his overall risk to reoffend as moderate. The assessment concluded that the Defendant had high needs regarding attitudes and behaviors, stating that he was impulsive, that he generally did not think before acting, that he used aggression in dealing with others, that he did not see a need to change his lifestyle, and that he was hostile toward supervision.

The Defendant testified on his own behalf. He stated that in the past, he was impulsive and did not think before acting but that he now tried to "use [his] head" and tried to show people respect. He said that he started his own business as a truck driver seven years before the hearing, that he worked consistently, and that he took care of his family. The Defendant had two children, a fourteen-year-old and a twenty-two-year-old, and his oldest child had special needs. He said he understood his range of punishment and requested "the minimum," four years.

The trial court stated that it had considered the evidence presented, the sentencing principles embodied in Tennessee Code Annotated section 40-35-103, the arguments as to alternative sentencing, the nature and characteristics of the criminal conduct involved, enhancement and mitigating factors, statistical information provided by the Administrative Office of the Courts, statements made by the Defendant, and the Defendant's potential for rehabilitation and treatment. The trial court said that "the difficulty for the Court in this case is two things: your conduct in this case as to Count 4, and then your prior criminal conviction history." The trial court recalled that the Defendant fled from a police officer and risked many people's lives by traveling at high rates of speed through Henry County. The court asked if the offense occurred at night, and defense counsel said it occurred during the day. The trial court commented that "[s]omeone could have very easily been struck and killed, and it's just, you know, by God's good grace that nobody was." The trial court said that it was concerned about the Defendant's already having five felony convictions and that "the Court doesn't know what else to do to try to get you to recognize there's negative consequences for breaking the law[.]" The trial court then stated as follows:

> But that's what concerns this Court more than anything else: it's your concern for yourself, to heck with anybody else in the community, to heck with what the law is. I know it may not have been the best circumstance, if you had gotten arrested right then, and then pulled over and just dealt with that, but I think you realize now, that certainly would have been the best

approach.  And it's also a concern for the Court that this is -- you've got five prior felonies on your record.  I mean, Mr. McCain, the Court doesn't know what else to do to try to get you to recognize there's negative consequences for breaking the law and we've all got to abide by the law, if we don't there's adverse consequences for all of us.

The trial court said it hoped the Defendant would become less impulsive as he matured and aged.  The trial court found that the Defendant was a Range III, persistent offender and sentenced him to six years to be served at forty-five percent release eligibility.  The trial court stated that the Defendant was "a good worker" and that it would recommend him for "the work-in program" if he remained confined in Henry County.

## ANALYSIS

### I.  Notice of Enhanced Punishment

The Defendant claims that the trial court should have sentenced him as a Range I, standard offender because the State filed its notice of intent to seek enhanced punishment pursuant to Tennessee Code Annotated section 40-35-202(a) on the day of his sentencing hearing.  The State argues that the Defendant is not entitled to relief because he cannot demonstrate prejudice.  We agree with the State.

Tennessee Code Annotated section 40-35-202(a) provides:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea.  The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions.  The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named in the record is the same as the defendant before the court, and is prima facie evidence of the facts set out in the record.

The purpose of the notice of intent to seek enhanced punishment is to "(a) provide fair notice to an accused that he/she is exposed to other than standard sentencing, (b) to

facilitate plea bargaining, (c) to enable the accused to make an informed decision before entering a guilty plea, and (d) to a certain extent, to aid in trial strategy." *State v. Livingston*, 197 S.W.3d 710, 712 (Tenn. 2006) (citing *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990); *State v. Taylor*, 63 S.W.3d 400, 412 (Tenn. Crim. App. 2001)). "[T]he notice deals with the sentencing hearing, not the conduct of the trial on guilt or innocence." *State v. Stephenson*, 752 S.W.2d 80, 81 (Tenn. 1988). "Generally, if notice is filed late or is filed timely but is otherwise defective, the defendant must show prejudice before the notice will be rendered ineffective." *State v. Carter*, 121 S.W.3d 579, 585 (Tenn. 2003). However, "[i]f a notice document is so defective as to amount to no notice at all, then the State has not met its burden, and the defendant does not have to show prejudice." *State v. Williams*, 558 S.W.3d 633, 640 (Tenn. 2018). We review the sufficiency of the State's notice de novo with no presumption of correctness. *Id*. at 639.

The Defendant contends that he was not required to show prejudice because the State filed its notice after his guilty plea in direct contravention of the statute. In support of his argument, he relies on *State v. Pender*, 687 S.W.2d 714 (Tenn. Crim. App. 1984); *State v. Stephenson*, 752 S.W.2d 80 (Tenn. 1988); *State v. Benham*, 113 S.W.3d 702 (Tenn. 2003); and *State v. Cooper*, 321 S.W.3d 501 (Tenn. 2010).

In *Pender*, the State did not file a notice of intent to seek enhanced punishment before or after the defendant's trial. 687 S.W.2d at 720. Consequently, this court stated, without any discussion of prejudice, that it was "obligated to find that the trial court was without authority to impose Range II sentences upon the defendant." *Id*. In *Stephenson*, the State filed its notice of intent to seek enhanced punishment on the day the defendant's trial began. 752 S.W.2d at 80. Our supreme court determined that the defendant was required to show prejudice in order to render the late notice ineffective, particularly when the defendant did not move for a continuance or postponement of the trial as authorized by Tennessee Rule of Criminal Procedure 12.3(a).[2] *Id*. at 81. In *Benham*, the State did not file a separate pretrial notice of intent to seek enhanced punishment. Instead, the State advised the defendant in its written response to his discovery request that the State intended to use his criminal record for impeachment if he testified at trial and for sentencing enhancement purposes pursuant to Tennessee Code Annotated section 40-35-202(a). 113 S.W.3d at 703. The State attached a computer printout of the Defendant's criminal record to discovery. *Id*. Our supreme court concluded, again without any mention of prejudice, that the State's notice was insufficient to satisfy Tennessee Code Annotated section 40-35-202(a) because the printout failed to notify the defendant of the nature of his convictions

---

[2] Tennessee Rule of Criminal Procedure 12.3 provides, "If the district attorney general intends to seek an enhanced punishment as a multiple, persistent, or career offender, the district attorney general shall file notice of this intention not less than ten (10) days before trial. If the notice is untimely, the trial judge shall grant the defendant, on motion, a reasonable continuance of the trial."

as required by the statute and remanded the case for resentencing as a Range I, standard offender. *Id*. at 705.

Finally, in *Cooper*, our supreme court addressed the State's late-filed notice of intent to sentence the defendant to life without parole as a repeat violent offender pursuant to Tennessee Code Annotated section 40-35-120(i)(2). 321 S.W.3d at 506-07. Although the statute required that the State notify defense counsel, in writing, of the defendant's status as a repeat violent offender within forty-five days of arraignment, the State filed its "substantially compliant" notice after the defendant's trial. *Id*. at 508. Our supreme court noted the similarity between the enhanced punishment statute and the repeat violent offender statute and recalled the court's holding in *Stephenson* that the filing of a notice of intent to seek enhanced punishment on the date of the trial does not render the notice ineffective absent the defendant's showing prejudice. 321 S.W.3d at 507. The court ultimately concluded, though, that prejudice was not required for a post-trial notice of repeat violent offender status due to the severity of the sentence: a mandatory sentence of life without parole. *See id*. at 507-508. The court remanded the case for resentencing. *Id*. at 508. Subsequently, our supreme court clarified that "*Cooper* stands only for the proposition that if the State fails to give any notice at all prior to trial, it may not seek enhanced sentencing as a repeat violent offender." *State v. Patterson*, 538 S.W.3d 431, 439 (Tenn. 2017).

The Defendant deduces from *Pender*, *Stephenson*, *Benham*, and *Cooper* that a showing of prejudice is required only when the State files a notice of intent to seek punishment late but before conviction. However, none of those cases involved a guilty plea entered pursuant to a negotiated plea agreement. Moreover, the issue in *Pender* was the State's complete failure to file a notice of intent to seek enhanced punishment; the issue in *Stephenson* was a notice filed late but on the first day of trial; and the issue in *Benham* was a notice deficient in form and content, not timeliness. Therefore, our supreme court did not address in those cases whether prejudice was required for a notice filed *after* conviction. In *Cooper*, the State filed its notice of intent to sentence the Defendant as a repeat violent offender after conviction, and our supreme court remanded for resentencing without requiring prejudice due to the severity of that statute's mandatory sentence of life without parole. A mandatory sentence of life without parole is not at issue here. In sum, the cases cited by the Defendant are not dispositive to the issue in this case of whether a defendant is required to show prejudice when the State files its notice of intent to seek enhanced punishment after entry of a guilty plea.

Although not on point, this court's opinion in *Crump v. State*, 672 S.W.2d 226 (Tenn. Crim. App. 1984), is instructive. In *Crump*, a post-conviction case, the petitioner claimed that his guilty plea was invalid because the State did not file any notice of intent to seek enhanced punishment as required by Tennessee Code Annotated section 40-35-

202(a). 672 S.W.2d at 227. This court stated that "[t]he mere failure to file a statement under the statute prior to the plea of guilty does not vitiate the plea, where the record shows the appellant was aware of the intent of the [S]tate to ask for enhanced punishment and where he bargained on that basis." *Id*. Citing *Crump*, this court repeatedly has refused to grant relief based on the State's complete failure to file a notice of intent to seek enhanced punishment pursuant to Tennessee Code Annotated section 40-35-202(a) when the record reflects that the defendant had actual knowledge that the State intended to ask for enhanced punishment and that the defendant bargained for the plea on that basis. *See Brooks v. State*, 756 S.W.2d 288, 291 (Tenn. Crim. App. 1988) (seeking post-conviction relief); *State v. Robinette*, No. E2014-01688-CCA-R3-CD, 2015 WL 4745065, at *5 (Tenn. Crim. App. Aug. 11, 2015) (seeking to withdraw guilty pleas), *no perm. app. filed*; *Michael Ralph Brown v. Mills*, No. E2007-01891-CCA-R3-HC, 2008 WL 4949193, at *3 (Tenn. Crim. App. Nov. 17, 2008) (seeking habeas corpus relief), *no perm. app. filed*; *Coons v. State*, No. 01C01-9801-CR-00014, 1999 WL 275009, at *6 (Tenn. Crim. App. May 6, 1999) (seeking post-conviction relief); *State v. Estep*, No. 1130, 1988 WL 27276, at *1 (Tenn. Crim. App. Mar. 23, 1988) (seeking to withdraw guilty pleas).

In a case more recent and more on point, this court stated in *State v. Beard*, No. E2024-00899-CCA-R3-CD, 2025 WL 315443, at *1 (Tenn. Crim. App. Jan. 28, 2025), *perm. app. denied* (Tenn. May 28, 2025), that a defendant is required to show prejudice when the State files its notice of intent to seek enhanced punishment after a defendant's guilty plea. At the defendant's plea hearing, the trial court advised him of his range of punishment as a Range I, standard offender but also advised him that his final sentencing range would be determined at sentencing based on his prior criminal record. *Id*. On direct appeal of his convictions, the defendant claimed that the trial court erred by sentencing him as a Range II offender. *Id*. at *5. This court first concluded that the defendant waived the issue for failing to object to the late-filed notice at sentencing. *Id*. at *5. This court then stated:

> Waiver aside, to be entitled to relief, the Defendant must show that he was prejudiced by the late-filed notice. He has failed to make such a showing. The Defendant knew of his prior convictions and knew at the time of his guilty plea that the prior convictions might affect the applicable sentencing range, having been so informed by the trial court. Accordingly, we conclude that he cannot show prejudice, and he is not entitled to relief.

*Id*.

Turning to the present case, we agree with the trial court that the Defendant was required to show that he was prejudiced by the State's late-filed notice in order to obtain relief. At the Defendant's guilty plea hearing, the trial court correctly advised him that his

range of punishment was one to six years and advised him that his release eligibility would be thirty, thirty-five, or forty-five percent, depending on his prior criminal history. *See* Tenn. Code Ann. §§ 40-35-112(a)(5), (b)(5), (c)(5); -501(c)-(e). The trial court also advised him that the court would determine his sentence after a sentencing hearing and that there was no guarantee as to his sentence. The trial court asked the Defendant throughout the hearing if he understood, and the Defendant said yes. At the sentencing hearing on June 10, 2024, the State informed the trial court that the parties had verbally agreed that the Defendant would plead guilty as a Range III offender and would receive a sentence of four to six years to be served at forty-five percent release eligibility. Defense counsel did not dispute the State's comments about the verbal agreement. Although the Defendant contested the State's late-filed notice at the sentencing hearing, the trial court gave him the opportunity to withdraw his plea, with the State's consent, and he declined. Accordingly, the Defendant has failed to show prejudice, and he is not entitled to relief.

## II. Sentencing

The Defendant claims that his six-year sentence, the maximum punishment in the range, is excessive because the trial court did not apply any enhancement factors and because the sentence was not the shortest sentence deserved for reckless driving when no person or property was affected; the sentence was not the least severe measure necessary to achieve the purpose for which the sentence was imposed; and the trial court failed to consider sufficiently his potential for rehabilitation. The State argues that the trial court acted within its discretion when it imposed the sentence. We agree with the State.

This court reviews the length, range, and manner of service imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). In determining a defendant's sentence, the trial court is to consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the mitigating and enhancement factors, (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, (7) any statement by the Defendant in his own behalf about sentencing, and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98.

In sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and that is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §

40-35-103(2), (4). Additionally, a trial court is to consider a defendant's potential or lack of potential for rehabilitation or treatment. *Id*. at § 40-35-103(5). The burden is on the defendant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

*Id*. at § 40-35-210(c).

The trial court should consider enhancement and mitigating factors, but the statutory factors are advisory only. *See id*. at § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343 (quoting Tenn. Code Ann. § 40-35-210(d)). Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346.

Initially, the State contends that the trial court implicitly applied two enhancement factors to the Defendant's conviction: enhancement factor (1), that the defendant "has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," and enhancement factor (10), that the defendant "had no hesitation about committing a crime when the risk to human life was high." *See id*. at § 40-35-114(1), (10). We agree with the State as to enhancement factor (1) because the trial court expressly stated in pronouncing the Defendant's sentence that it had considered

the Defendant's "prior criminal conviction history." With regard to enhancement factor (10), the State argues that the trial court implicitly applied that factor because the trial court stated that someone could have very easily been struck and killed by the Defendant. However, that statement is not sufficient for us to conclude that the trial court found that the Defendant "had no hesitation about committing a crime when the risk to human life was high."[3]

Although the Defendant contends that the trial court failed to consider the principles of sentencing, the trial court specifically stated that it considered the sentencing principles embodied in Tennessee Code Annotated section 40-35-103. The record also reflects that the trial court considered the factors provided in Tennessee Code Annotated section 40-35-210(b). The trial court's comments demonstrate that the court was particularly concerned about the Defendant's criminal history, the circumstances of the offense, and his lack of potential for rehabilitation. The record supports the trial court. The presentence report shows that the middle-aged Defendant has been committing crimes since he was eighteen years old and that he was convicted of five felonies and eleven misdemeanors prior to this case. The Defendant's Strong-R assessment classified him as a moderate risk to reoffend and described him as impulsive, aggressive, and having no desire to change his lifestyle. The Defendant's six-year sentence was within the range for a Range III, persistent offender convicted of a Class E felony. Therefore, we conclude that the trial court did not abuse its discretion by imposing a six-year sentence.

## CONCLUSION

Upon our review, we affirm the judgment of the trial court.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE

---

[3] We note that application of enhancement factor (10) would have been error in this case because a high risk to human life is inherent in the offense. *State v. Cage*, No. 01C01-9605-CC-00179, 1999 WL 30595, at *13 (Tenn. Crim. App. Jan. 26, 1999).