MARGARET DANMOLE,                    )
                                     )
        Plaintiff/Appellee,          )    Appeal No.
                                     )    01-A-01-9512-CV-00565
v.                                   )
                                     )    Davidson Circuit
CHARLES L. WRIGHT,                   )    No. 91C-501
                                     )
        Defendant/Appellant.         )

FILED

June 26, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE HAMILTON V. GAYDEN, JR., JUDGE

NEWTON S. HOLIDAY, III
Petway, Blackshear & Cain
208 Third Avenue North
Fifth Floor
Nashville, Tennessee  37201
     ATTORNEY FOR PLAINTIFF/APPELLEE


ALAN M. SOWELL
Gracey, Ruth, Howard, Tate & Sowell
150 Second Avenue North
Suite 201
Nashville, Tennessee  37201
     ATTORNEY FOR DEFENDANT/APPELLANT

AFFIRMED AND REMANDED

# O P I N I O N

Defendant, Charles L. Wright, has appealed from the judgment of the trial court entered on the jury's verdict for plaintiff, Margaret Danmole. The jury awarded plaintiff $17,000.00 for her injuries and damages sustained as the result of an automobile accident.

Plaintiff was injured when an automobile she was operating collided with defendant's automobile at the intersection of Harding Place and General Lowery Drive in Davidson County. Plaintiff was traveling east on Harding Place, and defendant was attempting to make a left turn onto Harding Place. The parties agree that there was no traffic approaching from the west and that there was no traffic in the center lane when the accident occurred.

Plaintiff claimed defendant's vehicle was rocking back and forth into the eastbound lane of Harding Place. She testified that within a matter of seconds she observed defendant's automobile blocking half of the eastbound lane. As she approached the intersection, she applied her brakes in an attempt to avoid a collision. She then attempted to turn into the center lane, but was unable to do so before the automobiles collided. Plaintiff also contended that she was not speeding.

Defendant testified that a tree obstructed his view of oncoming traffic. Because of this, he claimed it was necessary for him to pull out into the eastbound lane in order to see. Defendant also admitted that he was not wearing his corrective lenses.

Melanie Goad, a passenger in plaintiff's vehicle, testified that it was apparent that plaintiff thought defendant was going to

2

pull out into the intersection. She also testified that defendant's automobile was several feet into plaintiff's lane of travel.

The officer who investigated the accident testified that his investigation revealed that plaintiff's vehicle left fifty-four feet of skid marks. He further testified that, based on his training and the evidence at the scene, plaintiff's minimum speed was thirty-five miles per hour. The speed limit at Harding Place was forty miles per hour. The investigating officer also placed the point of impact several feet into the plaintiff's lane of travel.

The issue in this appeal resulted from the fact that both Dr. E. Dewey Thomas, an orthopaedic surgeon, and Dr. Joel Buckner, a chiropractor, treated plaintiff. Specifically, defendant claimed the trial court erred when it dismissed certain jurors for cause because they stated that they would not be able to hear the testimony of both doctors and to give due deference to their testimony. That is, the trial judge dismissed each of the perspective jurors after they had testified, in effect, that they would give more weight to the testimony of the orthopaedic surgeon. Defendant argued the trial court erred by striking the jurors for cause and questioned the trial court's common law authority to challenge a perspective juror for cause where the juror has exhibited a "bias" and an inability to set aside those biases and to render a fair and impartial verdict.

During voir dire, the trial judge questioned the panel, in pertinent part, as follows:

> THE COURT: Those of you who have been under the care of a chiropractor, do you have an opinion negative to a chiropractor? Please raise your hand, if you do. Do you feel like a chiropractor is not a competent profession, in general? Okay.

3

Those of you who have never been to a chiropractor, do you have a predisposition to believe a medical physician, an orthopedist, is more competent, for example, than a chiropractor? Please raise your hand.

Okay. I'll have to start with you, Mr. Hoffman.

MR. HOFFMAN: Yeah, I don't have -- mean, everything I've kind of picked up. I probably don't think very much of chiropractors as health practitioners.

THE COURT: Ms. Daniels?

MS. DANIELS: A friend of mine had his ribs broken by a chiropractor, so I don't have much use for them.

THE COURT: Mr. Hudson.

MR. HUDSON: A friend of mine hurt his back. And going back and forth to the chiropractor, and his agony in talking about it, I don't think I would ever want to go to one.

THE COURT: Okay. Ms. Morris?

MS. MORRIS: I work for an internal medicine physician, and I just --

THE COURT: And you're prejudiced against chiropractors?

MS. MORRIS: I would prefer to go to a doctor before I'd go to a chiropractor.

THE COURT: Mr. Caul?

MR. CAUL: I wouldn't go to one. I would go to an orthopedist, rather than a chiropractor, on the basis of training.

THE COURT: Speak up, please. I didn't get that.

MR. CAUL: I would go to an orthopedist, rather than a chiropractor, based on their general training and background as I understand it.

THE COURT: Mr. Granbery?

MR. GRANBERY: I would have those same sentiments. I think a medical doctor has a little better track record. They've been around a little longer.

THE COURT: How about you, Mr. Burch?

MR. BURCH: I would agree with that, in that I've seen a news report about abuse in chiropractic involving car accidents.

THE COURT: Ms. Goree?

MS. GOREE: Pretty much I think what they're saying. I think there is times when they are

4

helpful; but I think I have concerns where they take on things where you should see an orthopedist.

THE COURT: Is there a chiropractor in this case?

MR. SOWELL: Yes, but there's no deposition.

THE COURT: Is there proof?

MR. HOLIDAY: Yes, Your Honor, he's going to testify.

THE COURT: I need to ask you: One of the live witnesses is a chiropractor, and I want you to search your soul and see if you believe you cannot listen to his testimony, or consider what expert testimony he'll produce to you, and maybe you will change your opinion. In other words, do you have closed minds about chiropractors? If you do, please raise your hand.

Mr. Hoffman? Ms. Reed?

MS. REED: I would just like to comment. I said I'd been under the care of a chiropractor, because of the way you stated the question. I went to one once, and all my other appointments were with an orthopedist.

THE COURT: My question is: Do you have a predisposition against chiropractors to the extent you would give his or her evidence more or equal credibility than you would an orthopedist? Could you keep an open mind?

MS. REED: Yes.

THE COURT: Mr. Hoffman?

MR. HOFFMAN: I think I would have to say I would take the word of a medical doctor, orthopedist, over a chiropractor. Just from my experience, I don't think I would be able to give him equal weight.

THE COURT: I appreciate your honesty.

Does anyone else feel like Mr. Hoffman?

MR. FRANKS: I'm a physician. I believe in medicine to be able to help people. But the system is not reasonable to me, and I couldn't accept that testimony as equal to that of a physician.

THE COURT: What is your specialty?

MR. FRANKS: I'm an anesthesiologist.

THE COURT: Ms. Goree?

MS. GOREE: I'm afraid I feel that way, too. I grew up in Louisiana, and when I was growing up, chiropractors were not even equal in the state of Louisiana. I know I come in with a biased opinion and would prejudge based on what I've observed.

5

THE COURT: Yes, ma'am.

MS. GOREE: If they're both here, the orthopaedic and the chiropractor, I would take the orthopaedic over the chiropractor. If the chiropractor is the only one, I would take his word for it.

THE COURT: There is orthopaedic testimony.

Mr. Hoffman, Ms. Daniels --

MR. SOWELL: Your Honor, if you're fixing to excuse them, I would object. I don't think that's grounds for cause. I think there can be a challenge from Plaintiff's counsel; but I think it would be improper to excuse them.

THE COURT: I'll note your objection. I'll excuse Mr. Hoffman, Ms. Daniels, Ms. Goree, and Dr. Franks as to cause.

Yes sir, Mr. Caul?

MR. CAUL: I would have difficulty dealing with the evidence from the chiropractor in the absence of other evidence offered by an orthopedist.

THE COURT: In this case, though, there is evidence from both professions. It would be up to you to weigh the evidence. Do you think you can do that fairly?

MR. CAUL: I think I can do that, yes.

THE COURT: Ms. Morris?

MS. MORRIS: I would be biased. I would listen to the orthopedist more so than the chiropractor.

THE COURT: The question is: Do you have an open mind? Do you have a predisposition that would prevent you from being fair?

MS. MORRIS: I would be more in favor of the physician than the chiropractor.

THE COURT: I'm going to release you to go down to the second floor.

MR. SOWELL: I want you to note my objection.

THE COURT: Anyone else that feels like you couldn't be fair in listening to the proof in this case and decide? That doesn't mean you have to decide in favor of the chiropractor or the orthopedist; but at least have an open mind and not a shut mind.


The trial judge has "wide discretion in passing upon the qualification of jurors in both civil and criminal cases." *Vines*

6

*v. State*, 190 Tenn. 644, 648, 231 S.W.2d 332, 334 (1950).  Absent a clear showing of abuse of discretion, the trial judge's determination of the jurors' qualifications is not subject to review.  *Lindsey v. State*, 189 Tenn. 355, 367, 225 S.W.2d 533, 538 (1949).

The ultimate goal of voir dire is to determine whether the jurors are competent, unbiased, and impartial.  The scope and extent of voir dire rests within the discretion of the trial court.  *State v. Harris*, 839 S.W.2d 54, 65 (Tenn. 1992), *cert. denied*, 113 S. Ct. 1368, 122 L. Ed. 2d 1368 (1993).  Even if the court errs by excluding a juror for cause, the error is harmless unless the jury who ultimately hears the case is not fair and impartial.  *State v. Simon*, 635 S.W.2d 498, 508-11 (Tenn.), *cert. denied*, 459 U.S. 1055, 103 S. Ct. 473, 74 L. Ed. 2d 621 (1982).

"It is axiomatic that a party is entitled to a jury composed of persons free from bias or prejudice."  *Carney v. Coca-Cola Bottling Works*, 856 S.W.2d 147, 149 (Tenn. 1993).  "'The right to challenge is a right to reject, not to select a jury.'"  *Estep v. State*, 193 Tenn. 222, 226, 245 S.W.2d 623, 625 (1951)(quoting *Wooten v. State*, 99 Tenn. 189, 199, 41 S.W. 813, 815 (1897)).  Parties to a law suit have a right to an impartial jury, but they have no vested right to any particular juror.  *Graham v. United States*, 257 F.2d 724, 729 (6th Cir. 1958).  The trial judge has the power and it is his duty to discharge any juror who, for any reason, cannot or will not be an unbiased juror.  *Walden v. State*, 542 S.W.2d 635, 637 (Tenn. Crim. App. 1976).  A juror must be free of even a reasonable suspicion of bias or prejudice to meet the requirement of impartiality.  *State v. Pender*, 687 S.W.2d 714, 718 (Tenn. Crim. App. 1984).

7

In the instant case, we find no evidence of abuse of discretion on the part of the trial court. Moreover, there is not even a scintilla of evidence in this record that the jury which tried this case was anything other than fair and impartial.

Therefore, it results that the judgment of the trial court is affirmed, and the cause is remanded to the trial court for further necessary proceedings. Costs on appeal are taxed to the defendant/appellant, Charles L. Wright.

_____
SAMUEL L. LEWIS, J.

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, J.