# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 15, 2015 Session

## RICHARD MULLER v. DENNIS HIGGINS, ET AL.

### Direct Appeal from the Circuit Court for Hamilton County
#### No. 12-C-288     Donald P. Harris, Judge

---

### No. E2014-00708-COA-R3-CV-FILED-JUNE 29, 2015

---

This is a personal injury action in which Plaintiff sued Defendant for injuries he sustained as a result of a two-vehicle accident. The jury allocated fifty percent of the fault for the accident to each party, and the trial court entered judgment on the jury's verdict. On appeal, Plaintiff argues that the jury was not fair and impartial and that the evidence presented does not support the jury's verdict. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

BRANDON O. GIBSON, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and THOMAS R FRIERSON, II, J., joined.

Danny Ray Ellis and Gary Massey, Jr., Chattanooga, Tennessee, for the appellant, Richard Muller.

Paul Campbell, III and Ronald D. Wells, Chattanooga, Tennessee, for the appellees, Dennis Higgins, and State Farm Mutual Automobile Insurance Company.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

The automobile accident giving rise to this litigation occurred in Hamilton County on Northpoint Boulevard just west of its intersection with Old Hixson Pike. Northpoint Boulevard has one lane of travel in each direction and one middle turn lane that can be accessed by either of the lanes of travel. Just east of the intersection of Northpoint Boulevard and Old Hixson Pike, there is a traffic light where Northpoint Boulevard intersects with Hixson Pike, which runs parallel with Old Hixon Pike.

Immediately before the accident, Dennis Higgins was stopped west of Old Hixson

Pike in the eastbound lane of Northpoint Boulevard in a line of cars waiting on the light at the intersection of Northpoint Boulevard and Hixson Pike. Around that time, Richard Muller pulled out of the parking lot of SunTrust Bank, which is located on the north side of Northpoint Boulevard, just west of Old Hixson Pike. Muller was unable to enter the eastbound lane of Northpoint Boulevard because of the line of cars waiting for the light. Instead, he proceeded east in the center turn lane, intending to turn left onto Old Hixson Pike. As Muller was approaching Old Hixson Pike in the center turn lane, Higgins realized he needed to turn left at Hixson Pike. Higgins checked for oncoming traffic in his side mirror and began to move into the center turn lane. As he was doing so, Higgins focused his attention forward to make sure he did not bump the vehicle in front of him. Higgins did not see Muller's car coming up behind him, and Muller did not see Higgins in time to avoid the collision. The left front bumper of Higgins's truck made contact with right side of Muller's car.

Higgins and Muller brought their vehicles to an immediate stop in the middle of Northpoint Boulevard. Higgins's truck received very minor damage to the front bumper. Muller's car sustained damage along the right side. Both drivers pulled into a nearby private driveway to exchange information. A police officer arrived almost immediately. The officer did not observe any signs of injury to either driver, and neither driver reported being hurt. After exchanging information, both drivers got back into their cars and left the scene.

Shortly after the accident, Muller reported having pain primarily in his back and legs.[1] Muller visited an orthopedic surgeon, who diagnosed him with a torn meniscus in his left leg. He had surgery to fix the tear in May 2011. Muller also sought treatment for back pain from two separate spine surgeons after the accident.

On February 20, 2012, Muller sued Higgins in Hamilton County Circuit Court, seeking $750,000 in medical expenses, lost wages, pain and suffering, and property damage. Higgins denied liability and asserted that the accident was caused by Muller's negligence. Following a period of discovery, the case proceeded to a jury trial over the course of three days in March 2014. The jury returned a verdict allocating fifty percent fault to each party for the accident, and the trial court entered a judgment on the jury's verdict. After the trial court denied Muller's motion for a new trial, Muller timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED AND STANDARD OF REVIEW

---

[1]Muller had a history of back and leg problems prior to the accident. He had surgery on his right knee in August 2010 after he hurt it stepping off of an airplane. He also had three back surgeries prior to the accident, the most recent of which was a spinal fusion surgery in 2006.

Muller raises the following issues for our review, as we have restated them:

1. Whether the trial court erred in failing to strike certain jurors for cause.

2. Whether the evidence presented supports the jury's allocation of fault.

On appeal from a jury trial, we will not set aside the jury's findings of fact unless there is no material evidence to support the verdict. Tenn. R. App. P. 13(d). Our review of the trial court's resolution of questions of law, however, is *de novo* upon the record, with no presumption of correctness. *Spencer v. Norfolk S. Ry. Co.*, 450 S.W.3d 507, 510 (Tenn. 2014).

### III. ANALYSIS

First, Muller argues that the trial court erred when it denied his challenges for cause to exclude certain prospective jurors. He argues that the trial court's denial of those challenges resulted in a jury that was neither fair nor impartial. We disagree.

Prior to a jury trial, the parties or their attorneys have the right to examine prospective jurors through a questioning process called "voir dire." Tenn. Code Ann. § 22-3-101 (2009); Tenn. R. Civ. P. 47.01. The purpose of voir dire is to determine whether prospective jurors meet the statutory requirements for service and can provide the parties with a fair and impartial trial. *State v. Howell*, 868 S.W.2d 238, 247 (Tenn. 1993). The trial court is vested with considerable discretion to determine the manner in which voir dire is conducted and is only subject to reversal on appeal if there is a clear showing that it abused its discretion. *State v. Sexton*, 368 S.W.3d 371, 390-91 (Tenn. 2012).

Generally, the attorney for the party with the burden of persuasion in the case begins the parties' questioning of the potential jurors, followed by counsel for the opposing party. 2 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 25:6 (2014–2015 ed.) The trial judge may also ask questions of the potential jurors to determine whether they are qualified to serve and ensure the parties' right to a fair and impartial jury. *Id.* After examination, the trial judge has wide discretion to excuse unqualified jurors. *Danmole v. Wright*, 933 S.W.2d 484, 487 (Tenn. Ct. App. 1996) (citing *Vines v. State*, 231 S.W.2d 332, 334 (Tenn. 1950)).

If the judge does not excuse a potential juror, the attorneys may accept the juror or attempt to have them excluded. A party seeking to exclude a prospective juror may do so either through a challenge for cause or peremptory challenge. *Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 107 (Tenn. 1996). Any prospective juror who does not meet

3

the qualifications for service or who, for any reason, cannot or will not be an unbiased juror may be challenged for cause. *See Danmole*, 933 S.W.2d at 487. The challenging party must ask the court to excuse the juror for cause and specify the grounds for doing so. *See Dukes v. State*, 578 S.W.2d 659, 664 (Tenn. Crim. App. 1978) (holding that there was no error in denying a challenge for cause where no reason for the challenge was given). Thereafter, the opposing party may object to the challenge and request permission to examine the juror for purposes of rehabilitation before the trial court rules on it. *See State v. Thomas*, 158 S.W.3d 361, 379 (Tenn. 2005). Trial courts have wide discretion in determining whether to grant or deny a challenge for cause. *Howell*, 868 S.W.2d at 248. Additionally, even if the court errs in denying a challenge for cause, the error is harmless unless the jury that heard the case was not fair and impartial. *Id.*

A party that disagrees with the trial court's denial of challenge for cause may still exclude the prospective juror using a peremptory challenge. *Id.* In civil cases, each party may assert peremptory challenges to exclude up to four prospective jurors without assigning any cause or justification. Tenn. Code Ann. § 22-3-104(a). To remove a prospective juror using a peremptory challenge, all the party must do is submit the name of the juror to the trial judge in writing after prospective jurors have been passed for cause. Tenn. R. Civ. P. 47.03. Because a peremptory challenge may be used to cure a trial judge's erroneous denial of a challenge for cause, the challenging party may not base an appeal on the trial court's denial of the challenge for cause unless that party exhausted its peremptory challenges. *Howell*, 868 S.W.2d at 248. This rule applies even where the person challenged but not excused for cause was, in fact, an incompetent juror. *Id.*

At the outset of the proceedings in this case, the attorneys conducted a voir dire examination of eighteen prospective jurors. After each attorney was given the opportunity to question the prospective jurors, Muller's attorney, Danny Ellis, challenged three of the prospective jurors for cause and was denied by the court:

> MR. ELLIS: I'd like to strike for cause, Your Honor, Ms. Collier, juror number 65.
>
> THE COURT: You can't do that this way. I don't remember what she said.
>
> MR. ELLIS: Your Honor, I believe that the law is I can make the motion if there is something that I thought was -- Ms. Collier, she is number 65 on the back row. Also, Your Honor, we move for cause Ms. Peck and Mr. Shetter. All three of them said they'd have a hard time and they could not award pain and suffering. And, Your Honor, the law is that if they think that they would be biased that is --

4

THE COURT: Well, I'm going to overrule you.

Following that exchange, the court excused seven prospective jurors, including Ms. Collier and Ms. Peck. However, the court did not exclude Mr. Shetter. The court did not specify whether the excused jurors were removed solely by the judge in the exercise of his own discretion or upon a challenge of one of the parties.

The trial court then called seven new prospective jurors onto the panel, and the attorneys conducted a second round of voir dire examination. Following the second round of questioning, Ellis challenged a fourth prospective juror for cause and was again denied by the court:

> MR. ELLIS: Your Honor, I'd like to strike for cause Mr. James Weyler, juror number 83. He clearly stated that he --
>
> THE COURT: I've already told you, Mr. Ellis, you can't do that this way.
>
> MR. ELLIS: All right, Your Honor.

The court then excused four more prospective jurors, including Mr. Weyler. Once again, the court did not specify whether the excused jurors were removed on the judge's own motion or on a challenge of one of the parties. The remaining individuals, including Mr. Shetter, served as the twelve-person jury with two alternate jurors.

In his brief, Muller contends that because his attorney was forced to exhaust his peremptory challenges to remove four biased jurors he originally intended to challenge for cause, a fifth biased juror, Mr. Shetter, remained on the jury.[2] Muller argues that he is entitled to a new trial because the trial court erred in denying his challenges for cause and its error resulted in a trial that was neither fair nor impartial. We note, however, that there is nothing in the record to reflect that Muller's attorney exercised all of his peremptory challenges.[3] In excusing prospective jurors, the court did not specify whether it was doing so on its own motion or on a challenge of one of the parties. Thus,

---

[2]Muller argues that the jury was not fair and impartial because there were five biased jurors he intended to remove for cause and he was only able to remove four of them using peremptory challenges after his challenges for cause were denied. It is not clear, however, from Muller's brief nor from the record, which five prospective jurors Muller claims were biased. During voir dire, Muller only sought to remove four prospective jurors for cause: Ms. Collier, Ms. Peck, Mr. Shetter, and Mr. Weyler.

[3]Such evidence could have easily been included in the record had the parties complied with Rule 47.03 of the Tennessee Rules of Civil Procedure, which provides that peremptory challenges be submitted in writing.

it is not clear whether any of the excused jurors were challenged peremptorily, much less whether they were challenged peremptorily by Muller. As the appellant, Muller has the burden to present this Court with a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn.R.App.P. 24(a). Without a proper record, we are precluded from considering this issue. *See State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. 2000).

Next, Muller argues that the evidence presented at trial does not support the jury's allocation of fifty percent of the fault to each party. Fault allocations do not differ substantively from the other factual determinations that juries make. *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 204 (Tenn. Ct. App. 2008). The role of appellate courts in reviewing such findings is very narrowly limited. *Id.*; *see also Braswell v. Lowe's Home Ctrs., Inc.*, 173 S.W.3d 41, 43 (Tenn. Ct. App. 2005) ("As every trial lawyer knows, challenging a jury's allocation of fault is the legal equivalent of a 'Hail Mary' pass."). As the Tennessee Supreme Court has recognized, the comparison and allocation of fault is a question for the jury, *Brown v. Wal-Mart Discount Cities*, 12 S.W.3d 785, 789 (Tenn. 2000), and appellate courts will not second-guess the jury's allocation of fault if there is any material evidence to support it. *Braswell*, 173 S.W.3d at 43. Moreover, in reviewing a judgment based on a jury verdict, we are not at liberty to weigh the evidence or decide where the preponderance lies. *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006) (quoting *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704-05 (Tenn. 2000)). To determine whether there is material evidence to support the verdict, appellate courts are required to: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Id.* If the record contains any material evidence to support the verdict, it must be affirmed. *Id.*

Construing the evidence as we must, we conclude that there is material evidence in the record to support the jury's finding that Muller was fifty percent at fault for the accident. The only two individuals who witnessed the accident and testified at trial were Muller and Higgins. Higgins testified that after he decided that he needed to turn left, he checked for traffic in the center lane by looking into his left side mirror and by turning to look over his shoulder. Higgins testified that when he did not see any oncoming traffic, he turned his attention back to the front of his truck to make sure he did not bump the car in front of him, let his foot off the brake, and entered the center turn lane at roughly one mile per hour. Muller also testified that Higgins turned slowly. Muller testified that as he approached Higgins' truck, he noticed that Higgins' truck was on the edge of the eastbound lane of travel and saw Higgins look down into his side mirror. Nevertheless, Muller did not honk his horn or flash his lights to notify Higgins that he was approaching. Though Higgins stated that he did not know how fast Muller was going prior to the

impact, he testified Muller's car continued roughly forty-five feet down the hill before coming to a stop. From these facts, the jury could have reasonably concluded that Muller had sufficient room to avoid Higgins' truck without a collision and that his failure to do so was caused either by his speed or lack of attention. Accordingly, there is material evidence support the jury's allocation of fifty percent of the fault to each party.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. The costs of this appeal are taxed to the appellant, Richard Muller, for which execution may issue if necessary.


_____
BRANDON O. GIBSON, JUDGE